Sam. P. Ramsey et al. v. John G. Tod, Secretary of State.

No. 1115.   Decided June 23, 1902.

1.—Corporation—Creation—Purposes—Two or More.

The law governing the creation of private corporations does not authorize an incorporation for two distinct purposes each of which is mentioned in a separate subdivision of article 642, Revised Statutes; as for the purchase and sale of merchandise, etc. (subdivision 24) and the accumulation and loan of money (subdivision 29).   (Pp. 621-626.)

2.—Same—Statutory Construction.

The re-enactment of the corporation law by successive legislatures after construction by the State Department permitting the filing of a charter embracing two or more of the purposes designated under distinct subdivisions of article 642, Revised Statutes, and without material change affecting such question, is held not to imply an adoption of such construction.   (P. 626.)

Original application for writ of mandamus to compel the Secretary of State to file the charter for a private corporation.

*Hill, Dabney & Carlton* and *Gregory & Batts,* for relators.—Will the true intent of the Legislature be nullified in this case by giving to the words used in articles 641, 642 their ordinary significance? The word "purposes" is here used in the plural and grammatically refers to pur-poses set forth in sixty numbered subdivisions which follow, and which are not put in the disjunctive, but apparently coupled together. To place upon the statute the construction maintained by the State would be to change the word purposes to read "any one of the following pur-poses," instead of as it appears, or to change the grammatical construc-tion of article 642 by inserting the word "or" between each of the subdi-visions or purposes set forth following article 642. That there was a legislative intent to use the word "purposes" in any other than its ordinary grammatical significance would appear to be negatived by the contents of the various subdivisions of this statute.

Many of the numbered subdivisions contain more than one purpose, and purposes which by the greatest flight of fancy can not be connected together or reasonably considered as one business.

The word "purposes" is used in articles 641-642. Articles 647, 648 and 649 are the same or practically the same as section 10, chapter 2, law of 1874. These articles provide for amendment of charters. Article 649 provides that "no amendments or changes shall be of any force or effect which are not germane to the original purposes or charter of in-

corporation and calculated to carry out and effect the same." In the original Act of 1874, the word "purposes" here used appears as "objects," the change being made by the codifiers of 1879. It will be evident that this section originally referred to the "original objects" of a corporation and was changed by the codifiers so as to refer to the "original purposes," so that it appeared that the Legislature had in mind not an original object or purpose to be contained in a charter, but that original objects and purposes would be embraced therein, and that to these original objects and purposes, others might be added by amendment provided they were germane. There is no intimation, therefore, that the original objects or purposes must be germane to each other. The circumstance that an amendment must be germane does not militate against the proposition that the original charter may name purposes that are not necessarily connected with each other. In the original formation of a corporation every person contemplating connection therewith acts upon his own discretion in determining the enterprises in which he may desire to invest his capital. Amendments may under the law be made without the concurrence of some of the stockholders, and the statute will not permit the capital to be invested contrary to the wishes of the stockholder except in something reasonably connected with the original enterprise.

This clause of article 649, if articles 641, 642 are construed as we maintain, will be in harmony therewith. If the construction sought by the State is placed upon article 642, then there will be a conflict with article 649; for the word "purposes" in the plural must be construed to read "purpose," and the court must hold that while the Legislature absolutely forbade an original charter with more than one purpose, such a charter could be taken out and then amended immediately and another purpose or purposes inserted, provided the same were germane to the original purpose. Here we would have at once a lack of logic, and we may say a lack of sense.

Section 22 of article 3, law of 1874, provides in substance that any corporation in existence before that date might accept under the general incorporation law by filing its acceptance with the Secretary of State, and that thereupon it should have the right to carry out objects of said corporation as described in their act of incorporation, or certificate filed under general law, within the limits or boundaries described in said act of incorporation, or certificate, and to possess all the privileges and franchises provided by their act of incorporation or certificate not abandoned in the copy of acceptance of any or all of the provisions of this act. Construing this clause with reference to the situation at the time, we find that in 1871 a general incorporation act was passed which was found to be void for lack of an enacting clause. The corporations here referred to which had filed certificates under the general law would be those who had filed under this law. Prior to 1871 there was no general law, and corporations were formed by special act. Section 22 here refers to both classes of corporations, and it is noticeable that it refers to "objects" in the plural as contained in both classes of corporations, and further au-

thorizes both classes of corporations to embrace any or all of the pro-visions of the general incorporation act of 1874.

It is impossible to refer to the hundreds of charters granted by special act prior to 1874, but it may be stated that these charters cover every conceivable purpose or purposes not forbidden by the Constitution or laws of the State, and it was to these and to charters taken out under the general law of 1871 that section 22 must have had reference.

This section is carried into Revised Statutes of 1879 as article 588, and in the present Revised Statutes is article 664. Placing upon it our construction, this clause is entirely harmonious with articles 641, 642, but can not be made to harmonize with the construction given by the Secretary of State. For under his construction, though the Legislature in 1874, by this section, authorized corporations previously incorporated for any and every purpose to take out new charters under the general act, with all of the objects, privileges, and franchises previously enjoyed, and also authorized such corporations to accept all of the provisions of the Act of 1874, yet in said act it intended to limit new corporations, forming under it, to only one purpose or subdivision. See 47 Texas, 401; 37 Texas, 207.

Laws are to be construed in light of former laws, or those superseded. In addition to parts of the general incorporation act, to which we have called attention, which are not in harmony with the construction sought to be given by the State, attention may be called to section 11, article 3, law of 1874, subdivision 4, which is carried into the Revised Statutes as subdivision 4, article 651, providing that corporations may hold, pur-chase, sell, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation shall require. The statute with regard to foreign corporations (Acts of 1889, page 87), as amended by Acts of 1897, chapter 119, page 167, provided that foreign corporations desiring to do business in the State shall file certified copy of their articles of in-corporation and that thereupon "the Secretary of State shall issue to such corporation a permit to transact business in this State. If such corporation is created for more than one purpose, the permit may be limited to one or more purposes." The act further provides that when permits have been so granted, such corporations shall be authorized to hold, sell, and mortgage property, etc., "as the purposes of such corpora-tion may require." It appears plainly from this act that it was the in-tention of the Legislature of Texas that foreign corporations, organized for more than one purpose, might, at least under certain circumstances, acquire permits to do business in Texas.

We believe that a reasonable construction of this act would be that if a foreign corporation having more than one purpose was to ask for per-mit for more than one purpose, then it would be the duty of the Secre-tary of State to examine its charter, and if the purposes for which it re-quired a permit were lawful, then that he would be required to issue the same, but if the purposes were not lawful or proper, then that he might limit his permit to one or more purposes which were lawful. The

act also plainly means that a foreign corporation, having more than one purpose, may limit its operation in Texas to one purpose at its option.

According to the various constructions, a method is at least provided by which, under some circumstances, foreign corporations may be granted permits for more than one purpose. Will anyone believe that the Legislature of Texas would be willing to grant permits to foreign corporations under any circumstances for more than one purpose when domestic corporations could not be chartered for more than one purpose under any circumstances?

If the words of a statute are plain, resort need not be had to construction by executive officers of the State. But admitting for sake of argument that there is any doubt about the construction of this statute, it is precisely such a case as calls most strongly for the application of the rule of contemporary construction. It is admitted that from 1871 to 1899, the State of Texas, through its various secretaries of state, did regularly grant, to private corporations desiring them, charters containing purposes embraced in more than one subdivision of the act, and that many hundreds of such corporations have every year since been doing business and are now doing business within the State of Texas under such charters. This was for twenty-eight years a fact notorious to the bar of the State and those called upon to prepare charters, and in fact notorious to the business world.

Since 1871 the Legislature has about twelve times re-enacted, enlarged and extended its general incorporation act, making it ever broader and broader, and adding to the purposes therein contained.

During the whole of this period it must be conceded that the Legislature knew what construction was being put upon the wording of this law, yet it was never in any respect changed or modified. It would have been very easy, in one of their numerous amendments, to have changed the language so as to have it read "Corporations may be formed for any one of the following purposes to wit," or to have put the subdivisions of the act in the disjunctive by inserting the word "or" between each of them, yet this was never done. We urge upon this court that if the language of the statute was very doubtful, or even if the court be inclined to hold that the construction now contended for by the State is a correct one, it should hesitate a long time before taking so serious a step as to change the construction acted upon for so many years. It is well known to the court that a large part of the business of the State is conducted through corporate enterprises and that a very large per cent of its capital is invested in them. These corporations were formed and this capital has been invested permanently, under the construction formerly given by the State. To now hold that that construction was a wrong one, is to hold that all of these corporations were improperly formed and are not bodies corporate and have never been, for it is plain that if their charters embraced more than one purpose, and this is forbidden, there is no valid incorporation for any purpose. See Williams v. Enterprise Co., 57 N. E. Rep., 581. The result of holding these concerns

not bodies corporate, would be liquidation, receivership, and loss of vast amounts of property vested under the construction of the laws to which the State had given sanction for many years.

The best that the courts could do for the stockholders of these corporations would be to hold that, while not de jure, they were de facto corporations, and that therefore the members are not liable for debts; but of course the courts could not relieve them of the consequences of the destruction and impairment of corporate property resulting from cessation of corporate existence.

When the consequences are to be such as these, we would suggest that, with deference to this court, it should hesitate to set a new construction against a construction heretofore given by the Legislature and officers of this State, whatever might be its views of the question as an original proposition. We believe that the history of legislation on this subject, as given in our brief, demonstrates beyond a question that it has always been the policy of this State to enlarge and broaden the means and avenues of corporate enterprise.

Every session and special session has witnessed an extension. We do not believe that public policy as adopted by this State indicates any intention to confine corporations to one purpose, nor does it appear that former Legislatures have believed such a policy the best for the State. Whether this policy is the best, or the one inaugurated by the Department of State is more desirable, is a question for the Legislature to settle. If the practice of a State for twenty-eight years to grant charters for more than one purpose is an evil one, it is an evil which the State has chosen for herself, and it would be a greater one to overturn this construction. If it be the will of the State to no longer allow corporations to be formed for more than one purpose, that will can be exercised by the next Legislature, and it appears that the subject can more safely be left to them. On this subject see Railway v. State, 81 Texas, 602.

Revised Statutes, article 643, subdivision 2, provides that a charter must be prepared, setting forth, among other things, "the purpose for which the corporation is formed." The word "purpose" is used here in the singular, and this is the only place where it is so used in any part of our corporation law. We do not think that the whole law should be adjusted to and construed by a section which only refers to the manner in which the charter shall be prepared. We believe that it has always been held that where a form has been inserted in a statute, substantial compliance therewith is sufficient, and that the form does not govern the substance of the law. But we think there is no trouble in harmonizing this clause with the remainder of the statute, for the word "purpose" can refer only to the general ends for which a corporation is to be organized, which may embrace several objects even under the construction contended for by the State, for several subdivisions of article 642 express more than one purpose; it should be noticed that article 641 provides that private corporations may be formed "for the purposes and in the manner hereinafter mentioned." The word "purposes" refers to and

should govern those parts of the act which refer to the substance and nature of the corporation. Those parts of the act which provide the manner and form of execution of the charter and filing thereof are to be construed with reference to the word "manner" contained in article 641. In article 643 it is intended to provide merely a convenient form which must be substantially complied with in drawing up a charter. This construction we think has been given to the form set forth in the statute for acknowledgments and various other forms. While, as before stated, we do not give great weight to citations of authority from other States, the wording of our statute and its surroundings being so different, yet we respectfully refer to the court to case of Bird v. Daggett, 97 Massachusetts, 494, and in connection therewith to the statute construed, being chapter 61, pages 341 and 343, General Statutes of Massachusetts, 1860 (found in Secretary of State's office).

In form this act is nearer like ours than the act construed by the Supreme Court of Indiana, and it also prescribes a form for drawing up charters, which among other things declares the same shall set forth the "purpose" for which a corporation is formed.

Under the construction of the article, by virtue of subdivision 21, a corporation may be formed: (1) For the construction, etc., of street railways; (2) For the construction, etc., of suburban belt lines; and (3) for the establishment of companies to buy, own, sell, and convey right of way upon which to construct railroads. The first and second of these purposes may be reasonably connected with each other, but the third has absolutely no connection with the other two. Subdivision 28 authorizes a corporation (under the construction of the State) for the following purposes: (1) The construction, etc., of mills; (2) the construction, etc., of gins; (3) the construction, etc., of cotton compresses; (4) the construction, etc., of grain elevators; (5) the construction, etc., of wharves; (6) the construction, etc., of public warehouses; (7) the purchase, sale, etc., of products and commodities; (8) the loan of money.

If the contention of the respondent is correct, and there is any public policy which would confine a corporation to a single purpose, then certainly in this case the policy has been forgotten.

Subdivision 47 authorizes, under this construction, "the organization of fire, marine, life, and live stock insurance companies," notwithstanding the fact that the statutes prohibit a fire insurance company from doing a life insurance business. The subdivisions mentioned and subdivisions 38 and 39, clearly indicate that the "purpose" named in article 643 may be several of the purposes of article 642.

It is believed that the specific cases to which attention has been called negative the idea that the Legislature has intended to do that which respondent insists was intended. Let it be conceded that it was not the intention to permit incorporation for all the purposes named in the article; the alternative is that the Legislature intended that incorporation might be had to carry on related enterprises. This purpose is

clearly expressed in subdivisions 8, 13, 15, 16, 17, 21, 23, 26, 28, 31, 38, 39, and 60, and perhaps in some other subdivisions.

There is nothing in the other businesses for which incorporation is authorized that would require or suggest a more rigid rule. No reason could be adduced why the same rule should not apply to all the other businesses. Article 649 authorizes amendments "which are germane to the original purposes or charter." Clearly this would authorize the insertion by amendment of a "germane purpose." It would be foolish to insist that incorporation could be had for only one purpose, but that the charter could be immediately amended to include another.

Article 642 is the result of much legislative tinkering and contains much that is unnecessary, and some clauses that would be difficult to explain if it had been written at one time by a single pen.

The authority specifically given to certain corporations "to accumulate and loan money" might under such circumstances suggest that other corporations were not to have that right. But it will be borne in mind that practically every Legislature since 1871 has amended this article. The amendments have not been made in response to any great public necessity or demand, but as the result of a desire on the part of particular individuals for a more specific statement of the powers of a contemplated corporation. This suggestion is reinforced by a consideration of other subdivisions, as 14, which authorizes incorporation "for any manufacturing business;" notwithstanding this, at least four kinds of manufacturing establishments are specifically provided for.

In a number of cases incorporation is authorized for purposes that would be within the implied powers of other corporations. It could not reasonably be contended that these powers are taken away because they are incorporated as subdivisions of the law. If they are, in fact, among the powers or purposes of the corporation, the expression of them in the charter can not be wrongful, and would not authorize the Secretary of State to refuse to file a charter which, if they had not been inserted, he acknowledges he would have had to accept. The purposes set forth in the charter tendered by relators, are the purchase and sale of goods, wares, and merchandise, and agricultural and farm products, and the accumulation and loan of money in carrying on the said business. It must be presumed if the charter can be granted to the company that it is its intention to pursue this business as a whole in a legal way, and not to exceed such powers as it may receive from the State nor to pursue either of said businesses in any manner not authorized.

It is a matter of common knowledge that the business of dealing in goods, wares, and agricultural and farming products in Texas, particularly where it is proposed to deal with farmers and planters, can not be and is not ordinarily pursued unless the merchant is in a position to make advances in the spring against crops to be produced and marketed in the fall; therefore, the accumulation and loan of money is not only an incident to such business, but is a necessary concomitant.

In conclusion, our contention is: (1) A proper construction of article 642 and other acts concerning the same subject matter, shows conclu-. sively that the Legislature contemplated the formation of corporations. for more than one purpose under some circumstances.

(2) If there is any reason, either in the act itself or in public policy,. why a charter may not be granted for any or all of the purposes contained in said act, then the purposes for which any one charter is allowed must be such as are reasonably connected, or forming one line of businesses, whether contained in one subdivision or not.

(3) The purposes contained in charter tendered by relators are contained in the act, and are also necessarily connected, and on either theory the charter should be granted.

*C. K. Bell,* Attorney-General, for respondent.—The Secretary of State refused to file and record said proposed charter of said company and give his certificate showing the record of same, for the reason that it is sought to incorporate a corporation for two distinct purposes for which corporations may be chartered, one of such purposes being those embraced in subdivision 24 and the other in subdivision 29 of article 642 of the Revised Statutes of Texas.

Article 642 of the Revised Statutes enumerates the purposes for which corporations may be formed and separates such purposes by appropriate subdivisions.

Article 643 of the Revised Statutes provides that the charter must set forth, * * * "2. The purpose for which it (the proposed corporation) is formed."

The Legislature by separating the different purposes for which corporations may be formed and prescribing that the charter must set forth the "purpose" for which the corporation is formed, clearly intended that a corporation could be formed for only one of the purposes, otherwise there would have been no reason for the subdivisions of article 642 of the Revised Statutes; and subdivision 2 of article 643 would have read, "the purpose or purposes for which it [the proposed corporation] is formed."

We regard the case of Williams v. Enterprise Company, 57 Northeastern Reporter, 581, as being so directly in point, and so conclusive upon the proposition here submitted, that we content ourselves with referring the court to that case.

GAINES, CHIEF JUSTICE.—This is a petition for a writ of mandamus to compel the Secretary of State to file a charter under articles 642, 643, and 644 of the Revised Statutes. The cause has been submitted for final determination upon demurrers to the petition.

It is alleged in the petition, in substance, that the relators had prepared a charter in compliance with articles 643 and 644; that they had presented the same to the respondent with the request that he receive and record it in accordance with article 645. A copy of the alleged charter is made a part of the petition, and it appears therefrom that it designates

two purposes of the proposed corporation: (1) "The purchase and sale of goods, wares, and merchandise and agricultural and farm products;" and (2) "the accumulation and loan of money in carrying out said purpose." The sole ground upon which the demurrers are urged are that the proposed charter specifies two of the distinct purposes for which corporations may be formed, and that the statute permits an incorporation for one of such purposes only.

In considering the question so presented, a brief history of the statutes in question may be useful.

At the adjourned session of the Twelfth Legislature, in 1871, a bill was passed by both houses and approved by the Governor, which was intended to provide, by a general law, for the creation of private corporations for certain specified purposes. This bill, it seems, was a copy of the statute of the State of Kansas upon the same subject, and had no enacting clause. Acting upon the theory, as we presume, that the law was invalid for want of the enacting clause, the Thirteenth Legislature, for the purpose of giving validity to the act, passed a law amending the first section thereof by prefixing thereto such clause; but did not expressly re-enact the subsequent sections. Again, the Fourteenth Legislature, in 1874, re-enacted the entire act with some slight changes,—one especially in relation to the amendments of charters. Section 4, which declared that corporations could be formed for certain purposes, and section 5, which designated the purposes, and section 6, which prescribed the requisites of the articles of incorporation, which were to constitute the charter, were re-enacted without change. The Act of 1874 was incorporated in the Revised Statutes of 1879, without material amendment so far as the question before us is concerned. Sections 4 and 5 of the act apear in the revision as articles 565 and 566, and section 6 as a part of article 567. Article 566 has been frequently amended, and with its amendments appears in the Revised Statutes of 1895 as article 642. Articles 565 and 567 have never been amended, and are now articles 641 and 643 of the Revised Statutes now in force. The amendments to article 566 of the Revised Statutes of 1879 have been mainly by way of adding specifications of additional purposes for which corporations may be formed, so that the original specifications, twenty-seven in number, have been swelled to fifty-four in the Revised Statutes of 1895.

Since the original sections 4 and 6 have never been changed, and since section 4 has been amended only as to the subdivisions which specify the objects for which corporations are permitted to be created, we think that in order to determine whether a corporation may be formed for more than one of the designated purposes, we should go back to the original act. Our reason for this conclusion is, that if the intent of the original law was to permit an incorporation for one of the specified purposes only, and a subsequent Legislature had desired to change the law in so important particular, and to permit an incorporation for two of the purposes, they would have expressed their intention in clear language, and not have left it to be implied by questionable inferences.

The following are the sections of the original law which bear upon the question:

"Sec. 4.    Private corporations may be created by the voluntary association of three or more persons, for the purposes and in the manner mentioned in the following sections of this article.

"Sec. 5.    The purposes for which the corporations mentioned in the last section may be formed, are:

"1.    The support of public worship.

"2.    The support of any benevolent, charitable, educational, or missionary undertaking.

"3.    The support of any literary or scientific undertaking, the maintenance of a library, or the promotion of painting, music, or other fine arts.

"4.    The encouragement of agriculture and horticulture.

"5.    The maintenance of public parks, and of facilities for skating and other innocent sports.

"6.    The maintenance of a public or private cemetery.

"7.    The purchase, location and subdivision of lands, and the sale and conveyance of the same, in lots and subdivisions or otherwise.

"8.    The construction and maintenance of any species of road, except a railroad, and of bridges in connection therewith.

"9.    The construction and maintenance of a bridge.

"10.    The construction and maintenance of a telegraph line.

"11.    The establishment and maintenance of a ferry.

"12.    The establishment and maintenance of a line of stages.

"13.    The building and navigation of steamboats, and carriage of persons and property thereon.

"14.    The supply of water to the public.

"15.    The manufacture and supply of gas, or the supply of light, or heat, to the public by any other means.

"16.    The transaction of any manufacturing, mining, mechanical, or chemical business.

"17.    The transaction of a printing and publishing business.

"18.    The establishment and maintenance of a hotel.

"19.    The erection of buildings, and the accumulation and loan of funds for the purchase of real property.

"20.    The improvement of the breed of domestic animals by importation, sale or otherwise.

"21.    The transportation of goods, wares and merchandise, or any valuable thing.

"22.    The promotion of immigration.

"23.    The construction and maintenance of sewers.

"24.    The construction and maintenance of a street railway.

"25.    The erection and maintenance of market houses and market places.

"26.    The construction and maintenance of canals for the purpose of irrigation, or manufacturing purposes.

"27. For any other purpose intended for mutual profit or benefit not otherwise specially provided for, and not inconsistent with the Constitution and laws of this State.

· "Sec. 6. A charter may be prepared setting forth:

"1. The name of the corporation.

"2. The purpose for which it is formed.

"3. The place or places where its business is to be transacted.

"4. The term for which it is to exist.

"5. The number of its directors or trustees, and the names and residences of those who are appointed for the first year; and,

"6. The amount of its capital stock, if any, and the number of shares. into which it is divided."

Considering these provisions together, we are of the opinion that it was the intention of the Legislature to authorize a corporation to be formed for any one or more of the purposes as specified in any one of the subdivisions, and not for two or more purposes as designated in two or more subdivisions. Section 4 throws no light upon the question. As to this matter, language could hardly have been employed which would have been more indefinite. The words "private corporations may be created * * * for the purposes * * * mentioned in the following sections," may mean literally that a corporation may be formed for one of the purposes only, or for any one or more of the purposes, or for all of the purposes mentioned in the section.. So the language in section 5, "the purposes for which corporations * * * may be formed are," is equally indeterminate. But where we come to consider the requirements as to the contents of the charter as prescribed in section 6, the legislative intent becomes more apparent. One of these is that the charter must state. "the purpose" for which the corporation "is formed." For the reason that if it had been intended that a corporation might be created for two or more of the purposes specified in the preceding section, it would have been appropriate to have said "the purpose or purposes for which it is formed." The use of the word "purpose" in the singular number tends strongly to show that it was the intention of the Legislature to authorize the creation of a corporation for only one purpose, or for two or more of the purposes mentioned in one subdivision. It may be true that the use of the singular number may not be conclusive of the question, and that if there were other provisions in the act which, either by express declaration or clear implication, indicate that it was intended to authorize an incorporation for two or more of the designated purposes, whether in the same subdivision or not, we should so hold. But no provisions in the act which show satisfactorily such intention have been pointed out, nor have we found any. On the contrary, the structure of section 5 tends to show that it was only one purpose that was to be mentioned in the charter. If such was not the intention, why did the Legislature specify each purpose in a separate subdivision of the section, and number them from 1 to 27 successively? It is at least suggestive that

two purposes when not embraced in the same subdivision were not to be conjoined in a charter, but that they were to be severed and one alone adopted.

Further in this connection it is to be noted that we are not dealing with a hastily prepared legislative enactment. Unlike many others, the statute under construction is comprehensive in its scope, elaborate in its details, and bears evidence upon its face that it was thoroughly considered and carefully prepared by a person or persons learned in the law. In such a statute the designation of the purposes for which corporations were authorized to be created, in numbered subdivisions, together with the provision that the charter should set forth "the purpose for which it was formed," ought, in the absence of provisions indicating a different intent, to be deemed to show that the Legislature had in mind the creation of a corporation for one of the purpose or purposes specified in one subdivision only.

But there are also provisions in section 5 which support the construction which we give to the act. Subdivision 8 specifies one of the purposes as follows: "The construction and maintenance of any species of road, except a railroad, and of bridges in connection therewith." Subdivision 9 reads: "The construction and maintenance of a bridge." The question suggests itself, if it was intended to authorize an incorporation for two or more of the purposes named in two or more of the subdivisions, why, in a carefully prepared act like this, provide in subdivision 8 for the construction and maintenance of bridges in connection with roads, when bridges were provided for separately in the next subdivision? Again, why provide in subdivision 13 for "the carriage of * * * property" in connection with "the building and navigation of steamboats," when subdivision 21 specifies "the transportation of goods, wares, and merchandise, or any valuable thing," as one of the purposes for which a corporation may be formed?

So, also, under the amended law, as it appears in article 642 of the Revised Statutes of 1895, subdivision 17 provides for an incorporation for the purpose of "the erection and repair of any building or improvement, and for the accumulation and loan of money for said purposes," etc., and subdivision 27 authorizes a corporation for "the accumulation and loan of money." Again we ask, if the purpose specified in two distinct subdivisions may be combined, why specify the "accumulation and loan of money" in subdivision 17, when that purpose is separately provided for in subdivision 27?

But it is argued that, for the reason that some of the subdivisions of section 5 provide for more than one purpose, it is to be inferred that it was intended that two or more of the purposes named in different subdivisions may be combined. For the reason that the structure of the section suggests that it was framed upon the theory that a corporation could be created under one subdivision only, the reasonable deduction from the fact that some of the subdivisions specify more than one pur-

pose is that it was the intention to permit a combination of two or more purposes when named in the same subdivision, but in that case only.

But it is insisted that there are other clauses in the statute which show that a corporation could be formed for two purposes, provided for in separate subdivisions. The Act of 1874 made an addition to the original Act of 1871 as attempted to be passed, by providing for the amendment of charters, and in that connection this provision is found: "No changes or amendments shall be of any force or effect which are not germane to the original objects or charter of incorporation, and calculated to carry out and effect the same." This provision was carried into the Revised Statutes of 1879, the only change being the substitution of the word "purposes" for the word "objects." It is now article 649 of the Revised Statutes of 1895. So, also, by section 11 of the Act of 1874, now article 651 of the Revised Statutes now in force, corporations, among other things, are empowered "to hold, purchase, sell, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation shall require," etc. The contention is that the word "purposes" shows that it was contemplated that corporations might be created for more than one purpose. When we consider that some of the subdivisions provided for an incorporation for more than one purpose, it is apparent that the use of the plural "purposes" is entirely consistent with our construction of the law, and the argument loses its force.

It is alleged in the petition, in effect, and it is, of course, admitted by the demurrer, that since the passage of the law, successive secretaries of state have construed it in accordance with the construction of the relators. But we do not think that the construction of the statute is of such doubtful character that the action of the secretaries of state should be given controlling effect. Nor do we think the fact that the law has been amended by the Legislature since such construction by the executive officers of the State, without change as to the matter under consideration, affects the question. It is not such a matter as was likely to be called to the attention of the Legislature in amending the law in other particulars.

Our conclusion is that the statute does not authorize an incorporation for two distinct purposes, each of which is mentioned in a separate subdivision of article 642 of the Revised Statutes, and that, therefore, the writ of mandamus applied for in this case must be denied. What is the status of a charter which combines two purposes not authorized to be conjoined, and which has been accepted, filed, and recorded by the Secretary of State, is a question not before us.

The writ of mandamus is denied.

*Motion denied.*