This suit was instituted by appellee Routledge against Rambler Automobile Company, a corporation, to recover damages for injuries alleged to have been sustained by him on April 25, 1905, by reason of the negligence of an employé of said corporation in the operation of an automobile, owned by said corporation, in which Routledge was riding. The case was tried and the judgment reversed by this court. See 95 S.W. 749.
Routledge amended and, in addition to suing the corporation, sued F. Kirchhoffer, A. C. Shell, Edward Heusinger, Herman G. Staacke, August E. Staacke, August F. Staacke, Mrs. Adele Staacke, Staacke Bros., a partnership composed of Herman G. Staacke, August E. Staacke, and Mrs. Adele Staacke, and the Rambler Automobile Company of San Antonio, Tex., as a partnership composed of Staacke Bros. and the individuals above named. He alleged that, on April 25, 1905, said parties, and each of them, were engaged in the business of owning, operating, renting, and controlling automobiles for hire, and in the business of carrying and transporting passengers for hire, and acting as a common carrier of passengers for hire with automobiles in San Antonio, and that he became a passenger in one of the automobiles owned and operated by the parties, and that their agent, Street, who was in charge of the car, negligently operated the same, thereby causing plaintiff to be injured. The acts alleged to constitute negligence need not be stated. Plaintiff alleged that the parties, for the purpose of preventing him from collecting his damages, in February 1904, organized a bogus, fictitious, or dummy corporation for the purchase, sale, and renting of automobiles, parts of and accessories of automobiles, with a capital stock of $5,000; that the charter was signed and filed by A. Staacke, F. Kirchhoffer, and A. C. Shell, who were named as directors, but that all the parties were stockholders in the corporation and in the management of the business carried on by the corporation, and that the real purpose of the corporation was to act as a common carrier of passengers, and that it engaged in such business and continued therein, but that such business was in violation of law; that prior to the time he was inSured he did not know that the Rambler Company was a corporation. He alleged further that the company gave A. E. Staacke a chattel mortgage on all of its property and effects on December 23, 1904, which had been foreclosed and the property sold and bought in by defendant A. E. Staacke for $800; that said debt was fictitious, and the mortgage was given solely for the purpose of defrauding creditors of the corporation, and to hinder and delay them in recovering their debts; that plaintiff has an equitable lien upon said property, which is of the value of more than $1,000; and that said property should be applied to the payment of his debt. He alleged that all the defendants are partners in said Rambler Automobile Company and liable to plaintiff as such because they carried on a business not allowed by law to be carried on by corporations, nor permitted by the charter of the company, and for the transaction of which no charter could be given under the law; also, because they carried on business with less capital stock than the law permitted and before the lawful amount was subscribed, and before the amount of cash was paid in that the law required. Plaintiff finally alleged that if he was mistaken in regard to the company not being a legal corporation, and in regard to the right to recover against the parties other than the corporation, then that he asserts his rights as against the corporation. He prayed for $15,000 damages, and for $120.85, the amount of costs paid by him in order to get the mandate issued upon the former appeal, for cancellation of the Staacke note and mortgage, as well as the sheriff's deed conveying the property to A. E. Staacke.
August Ernest Staacke and Herman G. Staacke filed a general exception, and various special exceptions, all of which were overruled. They joined issue upon all material allegations except that plaintiff became a passenger in an automobile owned and operated by the Rambler Automobile Company, and that the item of costs paid in the Court of Civil Appeals was correct, and admitted that said Rambler Automobile Company was a corporation. They specially denied the partnership, and that they were then or ever had been engaged in the hiring or renting of automobiles, or that they or either of them were engaged in the transportation of passengers as individuals, or as partners or with the Rambler Automobile Company. They also alleged that in 1904 they obtained a charter from the state, and had carried on the business of a corporation under the powers granted by the state; also, that the corporation became indebted to A. E. Staacke in the sum of $4,500, and the note was secured by a chattel mortgage prior to the time that Routledge was injured; and that the note was sued upon, the mortgage foreclosed, and the property bought in at the sale for the sum of $800. They also alleged that Routledge was injured by his contributory negligence.
Before the argument to the jury, Routledge dismissed his case against August F. Staacke, F. Kirchhoffer, A. C. Shell, Edward Heusinger, Mrs. Adele Staacke, and Staacke Bros., as a partnership, but retained as defendants August E. Staacke, Herman G, Staacke, and Rambler Automobile Company, as a partnership, and Rambler Automobile Company, as a corporation.
The case was submitted upon special issues, and the jury found that the driver of the car, Street, was guilty of negligence in operating the car at the rate of speed he did it the time of the accident, acquitted the *Page 446 
other occupants of the car of contributory negligence, and assessed plaintiff's damages at $2,000. Judgment was rendered upon such verdict for $2,000 against August Ernest Staacke and Herman G. Staacke, jointly and severally, and the Rambler Automobile Company, as a corporation; also, against such corporation for $120.85 costs of the previous appeal, at the same time adjudging that he take nothing as against the Rambler Automobile Company as a partnership. This appeal is by August Ernest Staacke and Herman G. Staacke.
 Findings of Fact.
(1) The automobile in which Routledge was riding when injured belonged to the Rambler Automobile Company, a corporation, and was in charge of its employé, Street, who hired or rented the car to persons, including his services, at $2.50 per hour, and was allowed by his employer as compensation 20 per cent. of his receipts. The car had been hired by one Adams, who invited Routledge to enter the same and take a ride with him and his companions. The appellants were not present and did not participate in any way in the negligent act of Street which caused appellee's injuries.
(2) Before the accident occurred, Street informed Routledge that he was operating the machine for the Rambler Automobile Company, and that Adams had hired the machine from said company by the hour.
(3) The Rambler Automobile Company was granted a charter by the state of Texas on February 12, 1904. The incorporators were A. Staacke, F. Kirchhoffer, and A. C. Shell. The purpose for which it was incorporated was stated as follows in the charter: "The purchase, sale and renting of automobiles, parts of and accessories to automobiles."
(4) The capital stock was $5,000, divided into 50 shares, of which only 25 were ever issued. Of these, 22 were issued to A. Staacke, the father of appellants, one to appellant H. G. Staacke, one to Kirchhoffer, appellants' brother-in-law, and the other to Shell, theretofore an employé of Staacke Bros. A. Staacke was elected president of the corporation; Kirchhoffer, vice president; Shell, secretary; appellant H. G. Staacke, treasurer; and appellant A. E. Staacke, general manager.
(5) On December 23, 1904, appellant A. E. Staacke became the owner of the 23 shares which had been issued to A. Staacke and Kirchhoffer, and he was then elected president of the corporation, and H. G. Staacke, vice president, Shell remaining the secretary. The stock and offices were thus held at the time appellee was injured. The corporation, on December 23, 1904, owed $4,566, which indebtedness had been incurred to Staacke Bros., a firm composed of the two appellants and Mrs. Adele Staacke, but had been transferred to appellant A. E. Staacke. The vice president and secretary, under resolution duly passed, gave said A. E. Staacke a chattel mortgage upon the property of the corporation to secure the payment of the indebtedness and such other indebtedness as might thereafter accrue to him. The minutes show that he had also become the owner of the automobiles theretofore rented by the corporation from Staacke Bros., and that the corporation from then on rented the same from him. The mortgage was foreclosed in 1906 and the property of the corporation purchased by A. E. Staacke for $800. He then secured a charter for another company and turned such property over to it At the time he became the owner of the stock in and the indebtedness against Rambler Automobile Company, the liabilities of said company exceeded its assets.
(6) The Rambler Automobile Company rented its place of business from Staacke Bros., and purchased approximately $2,900 worth of cars and accessories from said firm when it began business, of which amount $2,500 worth was in payment of the stock issued by said corporation. The witnesses testified that each of the stockholders was charged on the books of Staacke Bros. with the amount advanced in payment for his stock unless it was paid in cash. The books showed that A. Staacke was charged with $2,300 for stock, from which it would appear that he paid for one of the other three original stockholders.
(7) A. E. Staacke never received any salary as general manager of the Rambler Automobile Company, and said corporation never paid any dividends.
(8) The Rambler Automobile Company began business right after its organization. Its business consisted principally in hiring out the cars owned by it and those rented by it at first from Staacke Bros. and afterwards from A. E. Staacke, such hiring being carried on in the same manner as the transaction between Adams and its employé, Street, upon the occasion when appellee was injured. It never sold any automobiles, but did sell automobile accessories. The organizer of the corporation intended to engage principally in the business of hiring out automobiles at the time they filed the charter, and such purpose was known to appellants, one of whom at once went into the office of general manager, and the other treasurer, of the business.
 Opinion.
The appellants contend that no judgment should have been entered against them, because Street was in the employ of the Rambler Automobile Company, a corporation, and they were not present at the time appellee was injured and in no manner participated in the act that caused such injuries.
By chapter 90, Acts of 33d Legislature the formation of corporations for the purpose of "conducting the livery and transfer business with autos and horses-drawn *Page 447 
vehicles, and for the sale of said vehicles," was authorized. But at the time the Rambler Automobile Company was chartered no such provision existed. Section 10 of article 1120 (as numbered in Statutes of 1911) provided for corporations for "the establishment and maintenance of a line of stages." No doubt, under this provision it would be immaterial whether the stages were to be drawn by horses or propelled by motor power; but by no fair construction can it be said that the charter of the Rambler Automobile Company granted it the power to maintain and operate a line of stages, or that said company was engaged in the maintenance and operation of a line of stages, or that appellee was injured in the operation of a stage. Section 18 of said article authorizes incorporation for the "transportation of goods, wares and merchandise or any valuable thing." It is also clear that the company was not chartered under this provision. These matters would not have been mentioned, had they not been urged in appellants' brief, for it is clear that the charter was not attempted to be drawn under either of the two subdivisions, but was drawn under subdivision No. 24, reading as follows:
"The purchase and sale of goods, wares and merchandise, and agricultural and farm products."
But the additional power of renting automobiles was included, which was not authorized by statute to be included with the other powers granted, nor to be given alone. No warrant existed under our law at that time for the filing of a charter wherein the purpose was stated in whole or in part as that of renting automobiles or other vehicles. The bills passed in 1871 and 1874 specifying the purposes for which private corporations could be created contained, as subdivision 27, the following general provision:
"For any other purpose intended for mutual profit or benefit not otherwise specially provided for, and not inconsistent with the Constitution and laws of the state." Act 12th Leg. c. 80.
In 1885 said section was omitted. Gammel's Laws, vol. 9, p. 679. No general provision was afterwards inserted, though the statute has repeatedly been re-enacted, and it became the policy of our law to limit the right of incorporation to the specific purposes authorized by statute. Not only that, but in addition they were limited to one business, which could consist of one or more of the purposes specified in any one subdivision of the statute, but not for two or more purposes designated in two or more subdivisions, unless expressly authorized by statute. Ramsey v. Tod, 95 Tex. 614, 69 S.W. 133, 93 Am.St.Rep. 875; Johnston v. Townsend, 103 Tex. 122, 124 S.W. 417. A charter violating this rule should not be filed by the Secretary of State, but the status thereof, when actually filed, has not been stated by our Supreme Court. See Ramsey v. Tod, supra.
Appellants say that the validity of the corporation can only be questioned by the state in a direct proceeding, but in Parks v. West,102 Tex. 18, 111 S.W. 729, the court, speaking of the doctrine to that effect, said:
"The rule is founded in public policy and convenience, merely, and is not to be so applied as to defeat the assertion of just legal rights by parties in the courts. It is said that it is essential to the doctrine that there be in existence a law in virtue of which such a corporation as that the party to the litigation claims to be might legally exist."
This is not a suit growing out of an obligation assumed by Routledge toward the ostensible corporation as a corporation, and we think there can be no doubt of his right to assert in this proceeding that the provision of the charter authorizing the renting of automobiles was not warranted by our laws then in force, and that such provision is void. It does not, we think, necessarily follow that the entire charter is void because the charter contains a power not authorized by law, for there is eminent authority for holding that in such case the provision granting the power not authorized by law will be treated as surplusage. Morawetz on Private Corporations, § 32; Galveston Land Imp. Co. v. Perkins, 26 S.W. 258. The word "renting," used in the charter, was given a very liberal construction by appellants, one doubtless never dreamed of by the Secretary of State who filed the charter, for they made it cover the business of hauling passengers for hire at a certain price per hour, an automobile livery business. If the charter can be construed as giving that power, no warrant existed for such grant, and the charter must be treated as if it was not contained therein. Nor does appellee depend upon the invalidity of the entire charter for asserting his right to judgment against appellants, but bases his claim upon the ground that the corporation was organized for the purpose of engaging principally in a business not permitted to be conducted by corporations at that time; that appellants knew that such was the purpose of the organizers; that they became stockholders and managing officers of the concern, and sent out their employés to carry on such business, and, having by negligence injured appellee in carrying on such business, should not be permitted to say that their liability was limited to what they had paid into the corporation for stock when there was no law which authorized the limiting of liability in the conduct of such business.
The corporation, throughout its history, was under the active management of appellant A. E. Staacke, first in the capacity of general manager, and afterwards as president. In one part of his testimony he speaks of taking out the charter as If he was the prime mover in the enterprise. He never drew any salary. No dividends were ever paid. It became insolvent, and at the time his father's stock was transferred to him its liabilities were approximately three times the amount *Page 448 
of its capital stock, and at the same time the claim of Staacke Bros. against the corporation for $4,566 was transferred to said A. E. Staacke, and he was given a mortgage on all of its property, which afterwards sold for $800. He also became the owner of the automobiles rented by the corporation from Staacke Bros. and then rented them to the corporation in which he owned $2,300 out of $2,500 worth of capital stock. These facts strongly tend to show that the corporation was intended merely as a means to an end — that of engaging in the auto livery business with practically no liability. Appellant H. G. Staacke was one of the original stockholders, and an official of the company from its organization up to the time when it went out of business.
We find no case in which the direct question presented in this case has been decided. In 10 Cyc. p. 676, it is said:
"It seems that, if a corporation embarks in a business with respect to which the statute law affords no immunity from the general liability of partners, the shareholders may become liable as such, although as to matters within the powers of the corporation and the protection of the statute law they will be protected from personal liability."
The case of Lehman v. Knapp, 48 La. Ann. 1148, 20 So. 674, is cited, and as contra the case of Automatic Lighting Co. v. Massey (Tenn. Ch.App.) 56 S.W. 35; but the latter case is not in point, for it appears that the defendant was not even a stockholder at the time the contract sued upon was executed, and also that the decision was based mainly upon the fact that plaintiff was suing upon a contract in which he recognized and contracted with the corporation as such. In 1 Cook on Corporations (6th Ed.) § 632, the author says:
"The general incorporating acts common to most of the states usually specify the particular kinds of business for the prosecution of which corporations may be formed thereunder. It follows that no business can be carried on by persons, as a corporation, under the incorporating act, unless that particular business is specified therein. * * * Thus, where a New Jersey corporation illegally practices dentistry in Pennsylvania, and one of its employes does negligent dental work, the directors and officers are personally liable for the damage; it appearing that they knew and assented to the company doing business in Pennsylvania. * * * Frequently certain kinds of business are not mentioned in the act, for the reason that it is not deemed wise public policy to allow a limited liability in that class of business, such as construction companies for the building of railroads. Accordingly, where the business for which incorporation is sought is not within the classes of business mentioned in the act itself, the attempted incorporation is void and the participants are liable as copartners."
The New Jersey case referred to is that of Mandeville v. Courtright, 142 F. 97, 73 C.C.A. 321, 6 L.R.A. (N. S.) 1003. In that case the parties held liable had a charter from the state of New Jersey to practice dentistry, and opened up an office in Pennsylvania in the name of the corporation. One of the employes fractured plaintiff's jaw bone and took out a piece thereof, greatly injuring her. The Circuit Court of Appeals held the managing officers and directors liable as partners, and the Supreme Court of the United States denied a writ of certiorari. The court in its opinion said:
"The defendants were bound to know that their corporation was forbidden by law to practice dentistry in Pennsylvania, and it seems to us that by the use of the name of the corporation they could not avoid personal liability for what they did. The defendants were not innocent nonassenting stockholders, but they were concerned knowingly and actively in the conduct of an illegal business carried on in the name of the incorporation. What was being carried on at their establishment, the practice of dentistry, the corporation could not conduct. This the defendants were bound to know. What, therefore, the corporation could not do, they could not, under the guise of its charter, carry on. And hence they must be conclusively held to have done themselves what was actually done. In a word, these defendants, in view of their knowledge and active participation, cannot be heard to say that what they were causing to be done was not being done by them but by their corporation, when that corporation could not conduct the business and they knew that it could not. If parties, even though organized as a corporation, knowingly conduct business wholly outside of the charter powers, or make use of the statutory organization to act in fraud of the laws of the state, for the sake of profit, their relation is that of partners. 1 Bates, Partn. § 6."
A somewhat similar case is that of Empire Mills v. Alston Gro. Co., 15 S.W. 506, 12 L.R.A. 366, by the Court of Appeals of this state. The defendants in that case were carrying on a merchandise business in Texas under an Iowa charter, at a time when there was no statute in this state authorizing incorporation for the transaction of a mercantile business. The court called attention to the repeal of subdivision 27 of the Acts of 1871 and 1874, hereinbefore set out, and said that such repeal was an emphatic denial to all parties of the right to organize mercantile corporations in this state. It was held that the parties were liable as partners, and that the plaintiffs were not estopped from suing them as partners by reason of having contracted with the ostensible corporation especially as there was nothing to show that the corporation was ever organized.
In both of the cases last considered the corporation was chartered in another state for a purpose not authorized by the laws of the state in which it transacted business, and the courts refused to recognize the corporation. The Rambler Automobile Company, we think, is entitled to be recognized as a corporation in the conduct of the business of buying and selling automobiles and accessories; but why should the courts recognize it as a corporation in the transaction of a business not permitted to be carried on by a corporation? To do so would be to set at naught our laws and throw the mantle of corporate protection over any kind of business, because it would only be necessary to incorporate for some other business for which *Page 449 
incorporation is authorized, and then engage in the unauthorized business.
We conclude that the trial judge did not err in rendering judgment against appellants.
Assignments Nos. 2 to 5, inclusive, 9, 12, and 15, relate to the matters discussed under the first assignment, and are overruled.
Assignments 6, 7, 8, 10, 11, and 13, relate to that portion of the petition seeking to set aside the sale of the property under foreclosure proceedings, and to apply it to plaintiff's claim. As no relief was given pursuant to this plea, the error, if any, in refusing to sustain exceptions thereto, is not such as to require a reversal of the case.
No judgment was rendered against appellants for costs of the other appeal, and the failure to strike out the item, as well as giving judgment therefor against the corporation, was not prejudicial to appellants. The fourteenth assignment is therefore overruled.
We conclude there is no merit in the cross-assignment, which complains of the failure of the court to render judgment against appellants for the costs of the appeal taken at a time when only the corporation was sued.
The judgment is affirmed.