### RICE et al. v. CONTINENTAL CASUALTY CO.

### No. 11425.

Circuit Court of Appeals, Fifth Circuit.

March 6, 1946.

Howell Ward, of Corpus Christi, Tex., and W. B. Moss, of Sinton, Tex., for appellants.

Gordon Boone, Hood Boone, Allen V. Davis, and T. H. Burruss, all of Corpus Christi, Tex., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

This is an action to recover the balance alleged to be due the plaintiff (appellee here) as premiums on three compensation-insurance policies. The controversy arose over the proper rate that should have been charged, it being conceded that the rate should have been either $2.70 or $4.36 per hundred dollars of payroll, dependent upon

the proper classification of the risks by the Board of Insurance Commissioners of Texas.

Standing upon their claim that the rate should have been $2.70 per hundred, defendants below (appellants here) filed a counterclaim for the excessive amount of premiums alleged to have been collected by the plaintiff. This counterclaim was denied by the court below, and judgment rendered for the plaintiff, from which judgment in its entirety the defendants appealed to this court.

■ Jurisdiction of the court below rested upon diversity of citizenship and the requisite amount in controversy. The fact that the plaintiff failed to recover the full amount demanded did not oust jurisdiction, since in good faith the complaint stated an amount within the jurisdiction of the federal district court. Upon the trial below, the court refused to inquire into the applicable rate, because the record showed that the identical question was determined by the State Board of Insurance Commissioners. The correctness of this ruling is challenged on this appeal.

■ We think the court below erred in failing to distinguish between the Commission's power to make rates and its power to apply them to particular risks. Rate-making is law-making, says the Texas court, but, after orders prescribing rates have gone into effect, such rates must be applied to particular services. In Texas, the same agency may fix insurance rates and apply them to workmen's compensation insurance policies. At least such is the construction that the intermediate appellate courts of the state have placed upon the local statute, and we are bound by it in the absence of a decision on the subject by the highest court of the state.[1]

■ The trial court cited two decisions[2] of intermediate appellate courts of Texas in support of its ruling that the issue was foreclosed by the State Board of Insurance Commissioners, but these authorities do not hold that the action of the board in applying the rates to particular risks may not be inquired into by a court of competent jurisdiction. On the other hand, the Foley and Brown-Root cases, supra, were decided by state courts of equal dignity, and expressly upheld the remedy herein sought by appellants. The amendment of 1943, providing that any party aggrieved should have the right to apply to a court for redress, merely expressed what previously had been implied.[3]

If we were free to construe the Texas statute[4] for ourselves, we might doubt the power of the Commission to apply to particular risks the rates promulgated by it; but that question is settled for the present, so far as we are concerned, by the Texas Court of Civil Appeals in the Brown-Root case, supra. Conceding the power of the Commission not only to promulgate rates but to apply them to particular risks, it is expressly held in the case just cited that the Texas legislature has not attempted to deprive the courts of power to grant redress for an error in rate-application as distinguished from rate-making. It points out that errors will inevitably occur in applying or administering valid rates, and holds that the party aggrieved by the payment or collection of the wrong rate is entitled to a judicial remedy for the injury sustained.

The Texas statutes in plain words clearly indicate the legislative intent with reference to the rates to be promulgated.[5] The Commission is directed to establish "all classifications of hazards and rates of premiums * * * applicable to each"; not to fix a separate rate for each payroll, but to determine hazards by classes and fix rates to apply to the payroll in each of such classes. To this end it may adopt a system of rating that takes into account the peculiar hazard of each individual risk, provided it is fair, reasonable, and not confiscatory, as to each class of insurance carriers authorized by law to write such insurance. In the instant case, the Commission determined the hazards by classes and fixed the rates applicable to the payroll in each of such classes. Each of the risks covered by the policies issued to appellants fell within one of these classes.

---

[1] Union Indemnity Co. v. Foley, Tex. Civ.App., 62 S.W.2d 684; Brown & Root, Inc. v. Traders & General Ins. Co., Tex. Civ.App., 135 S.W.2d 534.

[2] United Employers Casualty Co. v. Pearlman Auto Parts & Supply Co., Tex. Civ.App., 173 S.W.2d 374; English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633.

[3] Ch. 355, Sec. 1, p. 614, of Acts of 1943, Art. 4912 of Vernon's Civil Statutes of Texas.

[4] Art. 4911 of Vernon's Civil Statutes of Texas.

[5] Articles 4907–4918b, Vernon's Annotated Civil Statutes of Texas.

■ No attack is made in this case upon the classifications established or upon the rates so fixed. The only issues relate to the proper classification of the particular risks, i. e., as to the category in which each hazard fell. The court below was competent to adjudicate these issues, because the function of the Commission in applying the proper rate was not legislative but purely ministerial. Therefore, its action was subject to judicial review as in the case of erroneous charges on freight. As stated by the Texas Court of Civil Appeals: "The error made by the Department in applying a rate can no more give an insurance company the right to a wrong rate, than can an error made by a carrier in applying a rate give a shipper the right to a wrong rate." Brown & Root v. Traders & General Insurance Co., Tex. Civ.App., 135 S.W.2d 534, 541.

The question here is not which rates are valid, but which are applicable. The policy holders were boat builders and, during the period covered by the policies, had a contract with the United States to build wooden subchasers 110 feet in length. They built boats of no other type or class during this period. The two classifications of compensation-insurance that applied to boat builders in 1941 were the following:

Code 6824: "Boat building—Constructing or repairing wood or metal yachts, motor boats, sailboats, or row boats not exceeding 150 feet in length over all—including shop and yard work; drivers, chauffeurs and their helpers—N. P. D. with 6801, boat building, 6843 'ship building' or 6872, 'shipwright work.'"

Code 6801: "Boat building—wood—N. O. C.—including shop or yard work; drivers, chauffeurs and their helpers—N. P. D. with 6872 'shipwright work.'"

Code 6801 remains unchanged, and is now in effect; but effective March 1, 1942, the Commission rewrote Code 6824, so that thereafter it read as follows:

Code 6824: "Boat building—constructing or repairing boats not exceeding 150 feet in length over all—including shop and yard work; drivers, chauffeurs and their helpers—N. P. D. with 6801 'Boat building,' 6843, 'Ship building,' or 6872, 'Shipwright work.'"

There is no contention that this classification was retroactive as to outstanding policies. By stipulation of the parties, if plaintiff recovers, the amount of recovery should be $1353.54 with interest thereon as stipulated; if defendants should recover all of their demand, judgment should be in their favor for $10,438.43, but if they recover only from March 1, 1942, their judgment should be for $3,738.32 with interest as stipulated.

■ The language being plain and unambiguous, we do not need to look to extrinsic evidence for assistance in construing these orders of the state rate-making board. When these policies were issued, Code 6824 covered the construction or repairing of wood or metal yachts, motor boats, sail boats, or row boats not exceeding 150 feet in length. Effective March 1, 1942, it was amended so as to cover the construction or repairing of boats not exceeding 150 feet in length. This amendment did not change the types of boats covered; both before and after this amendment, Code 6824 covered the work that these policy holders were doing, and was the only classification that actually described the work then being done. This being true, Code 6801 was expressly rendered inapplicable by the abbreviation N. O. C., which as used therein meant not otherwise classified.

This was also the contemporaneous construction by the Commission placed upon Code 6824 as to other boatbuilders who were competitors of appellants and who were building boats of less than 150 feet in length. This classification being published and in force, the board was not authorized to limit its application to pleasure craft in a particular instance, and its action in so doing was void. It discriminated against appellants in favor of the yards with the $2.70 rate, since the former were forced to figure their bids so as to include the $4.36 rate. Such administrative interpretations are not binding upon the courts.[6]

---

[6] Texas & P. R. Co. v. United States, 289 U.S. 627, 640, 53 S.Ct. 768, 773, 77 L.Ed. 1410; United States v. International-Great Northern R. Co., D.C., 9 F. 2d 142, 143; Ramsey v. Tod, Secy. State, 95 Tex. 614, 69 S.W. 133, 136, 93 Am. St.Rep. 875; First Texas State Insurance Co. v. Smalley, 111 Tex. 68, 228 S. W. 550; McCallum v. Associated Retail Credit Men of Austin, Tex.Com.App., 41 S.W.2d 45.

Reversed and judgment here for appellants for $10,438.43 with interest, as stipulated, at the rate of 6% per annum.