THE RIO GRANDE CATTLE COMPANY V. BURNS, WALKER & CO.

No. 6779.

1.  Construction—Partnership.—March 1, 1883, four persons entered into articles of incorporation under the laws of the State.  The articles were duly filed with the Secretary of State.  Each member paid into the stock $10,000.  No certificates of stock were issued.  Nothing more was paid in by any of the stockholders nor anything withdrawn.  Regular meetings of the stockholders were had within the State.  The business, however, was carried on in Mexico.  The business was "buying, selling, raising, and breeding cattle," etc.  Some time in 1883 the stock book of the corporation and its original articles of incorporation were destroyed by fire.  February 1, 1884, the incorporators entered into a written agreement, which recited, "that whereas having equally invested $40,000 in cattle in the State of Coahuila, Mexico [describing the cattle by marks and brands], and each of us hereby agrees to become equally responsible for all cost and expenses of managing and handling said cattle, and also to become equally interested in all profits and increase of said cattle.  And it is further agreed by said parties, that in any material change in the management or handling of said above stock of cattle the wishes and opinions of each of the above interested parties shall be consulted."  Regular meetings as under the articles were held for several years thereafter.  The trial court held that the agreement of February 1, 1884, did not create a partnership, and that the corporation still existed.  On appeal the finding is sustained.

2.  Same—Interest of Stockholders.—Under the facts no formal issuance of stock to the holders was necessary to secure the interest of the stockholders in the corporation, and the stock could be assigned by the holders.

3.   **Corporation—Estoppel.**—A private corporation organized under the laws of the State carried on its operations in Mexico. In an action against it by a holder of one-fourth of its stock for its conversion, *held*, that the corporation having participated in the operations without the State is estopped from raising the issue as a defense in absence of any fact rendering such act void.

4.   **Conversion of Stock, Evidence of.**— Plaintiffs after having acquired the interest of a stockholder applied to the company for a transfer of the stock on the books, and for a certificate for the amount of the stock. The company refused both requests, or to recognize any right of the plaintiffs in the corporation. These acts amounted to a conversion of the stock under the law. The plaintiffs thereupon had the right either to sue for specific performance or for damages for the market value of stock so converted.

5.   **Limitation—Practice.**—It does not appear in the findings of fact by the court *when* the conversion complained of occurred. There is no statement of facts. The court below disregarded the plea of two years limitation. No request for a more specific finding is shown. *Held*, there is no ground for reversal in the omission of the court to state the date of the act complained of.

APPEAL from Mitchell.   Tried below before Hon. WM. KENNEDY. The opinion states the case.

*Chas. J. Jennings*, for appellant.—1. The original incorporators of defendant company having unanimously declared by an instrument in writing that the $40,000 invested in Coahuila, Mexico, should be a partnership estate between said incorporators, such action on their part segregated said investment from the assets and the capital stock of said company, and was a disposition of the same by said company to said parties under said written agreement, and the same was no longer a part of the capital stock of said company. Boone on Corp., sec. 204, note 2; Cook on Stock and Stockholders, sec. 629, and authorities cited in note 2; 1 Mora. on Priv. Corp., secs. 228, 229 (note 1), 423, 623.

2.   The conclusion of the court that the written agreement therein referred to [see opinion] entered into by all the stockholders was not evidence of a partnership already existing and did not create a partnership, and also that from the surrounding facts and circumstances the same was only an agreed statement or memorandum of the amount contributed by each of the parties and their rights and interests, varies and contradicts said written agreement. It is also contradictory in itself, in that it both affirms and denies that said written agreement was a partnership. Sayles' Civ. Stats., vol. 1, rule 22, chapter on Evidence, p. 699; Goode v. McCartney, 10 Texas, 193; Brinkley v. Harkins, 48 Texas, 225.

Counsel also cited Edwards v. Dickson, 66 Texas, 617; Railway v. Bremond, 53 Texas, 96; Williams v. Chandler, 25 Texas, 11; Scoby v. Sweatt, 28 Texas, 730; Cook on Stock and Stockholders, secs. 683, 39; Ins. Co. v. Mowry, 6 Otto, 544; Rev. Stats., arts. 3203, 1333; Ins. Co. v. Milliken, 64 Texas, 48.

*R. H. Looney*, for appellees.—1. It is a general rule of the law of comity among nations that a corporation created by one sovereignty is permitted to extend its operations into another.  2 Mora. on Priv. Corp., 2 ed., secs. 960, 962.

2.  It is not essential to the existence of a corporation that certificates of stock should be issued.  Glass Co. v. Dewey, 16 Mass., 94; Burr v. Wilcox, 22 N. Y., 551.

3.  Corporations can not be dissolved and changed into a copartnership by agreement among the shareholders or directors.  Rev. Stats., arts. 604, 605; Bank v. Heard, 37 Ga., 401; Harris v. Manfg. Co., 4 Block, 367; Iron Works v. Deer, 24 Pick., 362; Glass Co. v. Langdon, 24 Pick., 49.

4.  The written agreement set out in the court's findings was not intended by the parties as a dissolution of the corporation, because the court finds that at the date of the writing, February 1, 1884, their charter, by-laws, and stock book had been recently burned; and because afterward, on January 1, 1885, and January 1, 1886, they held corporation meetings, elected directors, and transacted corporate business as their charter and by-laws provided.  It is always competent to construe a writing looking to the position of the parties thereto at the time of the writing, and their conduct relative thereto afterward. Taylor v. McNutt, 58 Texas, 71; Goldman v. Blum, 58 Texas, 640–641; Haldeman v. Chambers, 19 Texas, 46; 1 Greenl. on Ev., sec. 277.

MARR, JUDGE, *Section A.*—There is no statement of facts nor bills of exception in the record.  The case is brought up upon the conclusions of fact and law of the district judge, and they illustrate the points at issue.  The findings are as follows:

"1.  That on the first day of March, A. D. 1883, I. E. Stevens, T. H. Hord, W. R. Nunn, and L. P. Glasscock entered into articles of in corporation, acting under title 20 of the Revised Statutes concerning private corporations, for the purposes as expressed therein of 'buying, selling, raising, and breeding cattle, and the acquiring of all such lands, pastures, and privileges as are necessary for the conduct of its corporate business,' with its chief office at Colorado, Mitchell County, Texas, and the business of the company to be transacted and conducted at such other places as its members shall see fit; which said articles of incorporation were duly filed in the office of the Secretary of State at Austin on the 5th day of March, 1883, and a certified copy thereof, under the hand and seal of the Secretary of State, was duly forwarded to and received by the incorporators.

"2.  That the said Stevens, Hord, Nunn, and Glasscock organized under said charter and adopted by-laws, and acting in accordance with its terms they each, in the early part of the year 1883, paid into said company the sum of $10,000 in cash, which was invested (all of it) in

the purchase of cattle in the Republic of Mexico during the course of that year.

"3. That the business of said company consisted and now consists of the raising, buying, selling, etc., of cattle in the Republic of Mexico. None of it has been done in Texas, except the holding of business meetings, and the said company has never had nor owned any property in this State at any time except during the transportation of a portion of its cattle to market through this State.

"4. That meetings of said company were regularly held in Colorado, Mitchell County, Texas, according to the requirements of its charter, on the 1st day of January, 1884, 1885, and 1886, at each of which meetings a quorum was present and business of the company transacted. No written minutes of any meeting were kept or recorded.

"5. That L. P. Glasscock was elected general manager of said company for the year 1883, and acted as such during that year; and at the regular meeting on the 1st day of January, 1884, T. H. Hord was elected general manager, and has continued as such since that date.

"6. That no certificates of stock were issued to any member of the company. A stock book and seal were purchased, but the stock book was destroyed by fire some time during the year 1883. The seal procured was not such as prescribed by the by-laws.

"7. There were never any more than the original members of said company, nor was any more money paid in by the members, nor was any at any time drawn out of it.

"8. That on the 1st day of February, 1884, in the belief that their charter had been burned by the same fire which destroyed their stock book, the incorporators entered into a written agreement, which recited therein, 'That whereas having equally invested $40,000 in cattle in the State of Coahuila, Mexico [describing the cattle owned by the company by marks and brands], and each of us hereby agrees to become equally responsible for all cost and expense of managing and handling said cattle, and also to become equally interested in all profits and increase of said cattle. And it is further agreed by said parties, that in any material change in the management or handling of said above stock of cattle the wishes and opinions of each of the above interested parties shall be consulted.' Which agreement I find from all of the surrounding facts and circumstances to be only an agreed statement or memorandum of the amounts contributed by each of the parties and their rights and interests, and that it was not intended to evidence a partnership already existing or to create a partnership.

"9. That plaintiffs are the legal and equitable owners of L. P. Glasscock's interest in said company. That defendants have converted to their own use said interest, which at the time of the conversion was of the value of $6000.

"10.  That plaintiffs are not barred by the statute of limitation to recover for said interest.

"I find as a conclusion of law that plaintiffs are entitled to a judgment for $6000."

The defendant caused an exception to be noted in the judgment entry to the conclusions of the court below, and has appealed, claiming that the findings of fact did not authorize the judgment rendered in several particulars.  It is agreed by counsel upon both sides that the controlling question on this appeal is the effect to be given to the written agreement of February 1, 1884, and described in the eighth conclusion of the court below.  The appellant contends that its legal effect was to create a partnership between the parties, and that the court erred in holding that they were not thereafter partners, but that the corporate relation and their rights and liabilities as stockholders still continued.  Appellee insists that no change was intended nor made, but that such an agreement, if intended to dissolve the corporation, would be ultra vires and void.  Appellant replies that the change was made by unanimous consent and a mutual agreement to which L. P. Glasscock was a party, and that therefore both he and his assignee are estopped from denying the change or contesting the validity of the agreement, even if it should be deemed illegal.  It is very evident, however, that if the court put the correct interpretation upon this agreement of the members of the corporation, construed by its terms and "from all of the surrounding facts and circumstances," and "that it was not intended to evidence an existing partnership nor to create a new one," then it will become unnecessary for us to determine the validity of the agreement or the question of estoppel.

1.   Under the facts found by the court the "Rio Grande Cattle Company" was clearly an incorporated body according to law, and certainly continued to be until the time of the agreement of February, 1884. About this there can be no dispute.   Rev. Stats., arts. 569–571, et seq. We will inquire now whether any change in the character of the body was designed by this agreement, or rather whether we would be justified, as the question is presented, in holding that the court below erred in finding that none was intended nor made.   Appellant's counsel insists that the District Court erred in considering "the surrounding circumstances," and that the effect of such course was to permit parol evidence to vary the written agreement, and that such circumstances ought not now to be considered in construing the writing.   No objection was made to the admission of the circumstances, if it would have been tenable, nor do we understand that the conclusions of the court contain all of the circumstances which it looked to in interpreting the agreement.   In the absence of a statement of fact and bills of exception we can only examine the main question in the light of the *conclusions* of *fact* as found by the court, not the details of evidence from which they

were drawn. Professor Parsons, in discussing "who are partners as to each other," says: "It should be added, that whether two or more persons are partners *as to each other* must generally, and perhaps always, be determined by the intention of the parties as the same is expressed in the words of their contract, or may be gathered from the acts and from all the circumstances which are available for the interpretation or construction of the contract." This we believe to be the correct announcement of the rule. Applying it to the question in hand, we fail to find in the record sufficient reasons to overrule the court below upon this particular issue.

We freely confess that the agreement under consideration in many of its features assimilates nearer to a partnership in defining the rights and liabilities of its members than to a corporation ordinarily under our law, and if standing alone, dissociated from other circumstances, in a business or commercial enterprise, we would be apt to regard it as intended to constitute at least a part of the articles of a partnership. But upon the other hand, in many essential respects partnerships and corporations are similar. Taylor on Priv. Corp., secs. 60, 64, et seq. It is to be observed in the present instance that we have not the benefit of the entire agreement, since only a portion of it is described in the conclusions of the court. That portion does not expressly make each of the members personally liable for the debts or expenses of the company, though the language used is strong, and under other circumstances might have warranted that inference. There were but four incorporators and stockholders in the concern, and each had contributed and paid in to the capital stock $10,000, and thus owned all of the stock or shares in equal proportions, and as a consequence were equally concerned and interested in the expenses and profits as well as in the property or assets of the enterprise, as was declared in the written agreement. Mora. on Priv. Corp., secs. 374, 379, 404, 405, 346; Rev. Stats., arts. 606–610. In this case, while the burning of the copy of the charter, as suggested, was a "trivial circumstance" that could easily have been remedied by procuring another copy, still the loss of "the stock book" by fire might have been a more serious matter, or at least so regarded by the parties, and hence, in order to recognize and manifest the equal rights and liabilities of the members and their interest in the property of the company, as they existed theretofore and originally in the corporation, the agreement was made as a suitable declaration thereof under the circumstances, as was held in effect by the court below.

Subsequently and for several years the court finds that there were meetings of the company at the proper times and place and "according to the requirements of its charter." Under such circumstances we conclude that the legal effect of the terms of the agreement does not necessarily denote a partnership as a matter of law, and there-

fore that we would not be authorized to hold that the court below erred in construing the agreement in the light of "all the surrounding circumstances" to be merely "an agreed statement or memorandum of the amounts contributed by each of the parties and of their rights and interest" in the corporation, and not the creation of a copartnership. This was a distinct conclusion of fact, as well as of law, made by the court, and in the absence of a statement of facts there are not in the record sufficient facts pointing to an opposite conclusion to warrant us in saying that the court was wrong in its finding.

2.   It is also objected that the court did not find that Glasscock had any stock in the corporation, because in the sixth conclusion the court finds that "no certificate of stock was ever issued to any member." The court, however, found that Glasscock paid into the company $10,000.   To secure his interest therein no formal issuance of a certificate was therefore necessary.   Mora. on Priv. Corp., sec. 258; Taylor on Corp., sec. 511.   He was entitled under the facts found by the court to have a certificate issued.   Id.   His interest in the corporation was fixed, and he had the right to transfer his stock.   Although our statute provides that the stock "shall be transferable only on the books of the corporation," still in this case the corporation upon demand refused to enter the transfer or to issue a certificate to the assignee.   Rev. Stats., art. 590.   The interest of Glasscock was clearly assignable, and his assignment thereof to the appellee under the circumstances vested at least the equitable title to the stock or interest of Glasscock in the appellee, and entitled it to demand recognition at the hands of the corporation.   Mora. on Priv. Corp., secs. 320, 321, 337, 326; Baker v. Wasson, 53 Texas, 150.   We think, therefore, that Glasscock originally, and the appellee by reason of the transfer, respectively had "stock in the corporation."

3.   Appellant also insists that the court erred in allowing plaintiff to recover and in recognizing its interest in the corporation, or that of Glasscock, because the investment was made entirely in property beyond the limits of this State, in Mexico, whereas "the charter was for the transaction of business in the State of Texas, and not elsewhere." We are not certain that we fully appreciate the force of this objection as applicable to the present controversy.   The court did not find that the terms of the charter restricted the transaction of all the business to the limits of Texas.   "The better opinion is that the mere transaction of such business as is usually done by the directors or other agents of the body may be done as well without the State as within it," while the inhibition "refers to acts of a strictly corporate character, such as must be discharged by the corporators themselves."   Land Co. v. Laigle, 59 Texas, 343.   The meetings and chief corporate business seems to have been performed or regulated within the State, and the principal office of the company was here, as required by law.   Without stopping,

however, to determine definitely the legality of the investments, etc., in Mexico, we are clear in the opinion that the question under the circumstances does not affect the rights of the appellee in this case, and that the appellant having caused, participated, and directed the investment, and all other acts that may have been performed beyond the State, is justly estopped from raising the issue in this controversy, certainly when no void act was found by the court below.  Taylor on Corp., secs. 219, 268, et seq.; Railway v. Gentry, 69 Texas, 625; 4 Am. and Eng. Encyc. of Law, p. 201.

4.   It is further assigned that the court erred in finding that there had been a conversion by the company of the Glasscock interest in the corporation, because the facts found did not authorize such conclusion. The suit was brought by the appellee on the 12th day of March, 1888, for damages on account of the alleged conversion of the share or interest above specified, which plaintiff had duly acquired under the assignment thereof made by Glasscock in the year 1887.  The conversion is alleged to have occurred on the 4th day of February, 1888, and the facts relied upon in the petition as constituting a conversion are substantially as follows:   That plaintiff, after having acquired the title to the Glasscock interest, applied to the company for a transfer of the stock on the company's books and for a certificate for the amount of stock; that the corporation refused to grant either of these requests or to recognize any right of plaintiff in the corporation or to the stock. That these acts amount to a conversion under the law is well settled by the authorities, and that thereupon it was at the election of the plaintiff to have either sued for specific performance or in assumpsit upon the case for damages, the measure of which would ordinarily be the market value of the stock converted.   The plaintiff pursued practically, though not technically (being unnecessary under our system), the latter course, and recovered the value of the stock.   Mora. on Priv. Corp., secs. 337, 338, and notes; Taylor on Corp., sec. 599; Case v. Bank, 100 U. S., 455; Kartright v. Bank, 20 Wend., 91; Baker v. Wasson, 53 Texas, 150; Land Co. v. Boussellet, 70 Texas, 422.   It was not alleged nor proved that the stock was liable for any debts, or for that matter that the company was in debt at all.

5.   It is urged that the court erred in not sustaining the plea of the statute of limitations of two years, interposed by the defendant.   It does not appear from the findings of the court that the conversion occurred more than two years before the institution of this suit, but quite the contrary appears from the allegations of the petition.   It is not made to appear to us, therefore, that the statute was at all applicable. But counsel for appellant insists that the court committed a material error in not distinctly finding the date of the conversion.   The presumption, in the absence of a statement of facts, would naturally be that the allegations of the petition were found by the court to be true.

It is now well settled that the statement of a conclusion of law in the findings of fact is not a reversible error, and that when the conclusions of the court are not deemed full enough the party complaining should call the court's attention to the omission and request additional findings, and if refused except to the refusal, or cause a statement of facts to be approved and filed. The facts found are sufficient to support the judgment in this case. Ryon v. Rust, 65 Texas, 529; Andrews v. Key, 77 Texas, 39; Railway v. Fossett, 66 Texas, 339. These remarks will also dispose of all of the objections in the assignments of error to the form of the conclusions of fact and law.

We have now noticed every fact, though not seriatim, and have found no reversible error. We have not considered what would have been the rights of the appellee had a partnership been shown, because counsel have not adverted to that aspect of the case, and because the suit was brought against the appellant as a corporation.

We conclude that the judgment ought to be affirmed.

*Affirmed.*