## THOMPSON *v.* GRACE.

### Opinion delivered May 31, 1909.

1. MORTGAGE—CONSTRUCTION.—Where one who owned a majority of the stock in a business corporation undertook to mortgage the entire plant of the corporation, the instrument will be enforced in equity as a mortgage of his stock. (Page 56.)

2. PARTIES—CONSTRUCTION OF STATUTE.—Kirby's Digest, § 6011, providing that "the court may determine any controversy between parties before it when it can be done without prejudice to the rights of others, or by saving their rights, but when a determination of the controversy between the parties before the court can not be made without the presence of other parties the court must order them to be brought in," intends to require all persons to be made parties to the action who will be necessarily and materially affected by its result, and to forbid the court from determining any controversy between the parties before it where it cannot be done without prejudice to the rights of others or by saving their rights. (Page 56.)

3. MORTGAGE FORECLOSURE—PARTIES.—In a suit to foreclose a mortgage upon corporate stock, neither the corporation nor the holders of other stock are necessary parties; as the court has power to protect the purchaser of stock at such sale by requiring a transfer thereof upon the books of the corporation. (Page 57.)

Appeal from Yell Chancery Court, Dardanelle District; *Jeremiah G. Wallace,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

This was a suit by appellee against appellant (defendant below) and wife, and E. G. Collier, to foreclose a mortgage given by appellant and his wife to appellee on certain lands and also what was known as the Post-Dispatch printing plant.

On the 14th day of October, 1908, the defendant Thompson and Collier filed answer admitting the execution of the note and mortgage to appellee, Grace, but allege that the printing plant was sold to Thompson by Jacoway without authority; that John H. Page from whom Jacoway bought the plant had no authority to sell same; that Thompson has been greatly damaged; that the sale of said property in its present condition of title will work a great sacrifice to the defendants, in that, without the cancellation of the title outstanding against the property, it will be sacrificed for want of bidders. They allege the printing plant to be the property of the Post-Dispatch Publishing Company, a corporation, and ask that the Post-Dispatch Publishing Company, John H. Page and H. M. Jacoway be made parties defendant; that their answer be taken as a cross-complaint against Jacoway and Page; that on final hearing the sale from Jacoway to Thompson be rescinded for failure of consideration; and that Jacoway and Page be decreed to pay off the mortgage debt to appellee, Grace, and that note and mortgage given by Thompson to Jacoway be also cancelled.

Depositions were taken, and on the day of the trial oral proof was heard, which was reduced to writing and duly made a part of the record.

On the 22nd day of October, 1908, the day the cause was set for hearing, plaintiff (appellee) filed an amended complaint, in which, in addition to certain allegations (in substance the same as those in the original complaint), he alleged that said J. S. Thompson mortgaged all the property of the Dardanelle Post-Dispatch Publishing Company; that said Thompson was not the owner of said Post-Dispatch Publishing Company, and that he had no right to convey same, but in fact he was the owner of 104 shares of stock in said Post-Dispatch Publishing Company, of the face value of $25 per share, aggregating $2,600, the entire stock of said Publishing Company being $3,000; that said mortgage was a lien on said stock or shares of stock of said Thompson, or an equitable assignment thereof; that by the sale of said Post-Dispatch by the said Jacoway to Thompson the said Jacoway intended to convey all his interest to the said Thompson whether it consisted of stock or otherwise of such company, and such likewise were the intentions of said Thompson when he executed to

plaintiff the mortgage sued on; and prayed that the said 104 shares of stock be sold, etc.

Defendant (appellant), answering the amended complaint, denies that said Thompson bought the stock of the said Post-Dispatch Publishing Company, but alleges that said Jacoway sold to and delivered to him (Thompson) the whole of the personal property mortgaged and took the mortgage (to himself), and induced him to execute the said mortgage to Grace, the said defendant at the time believing that he was acquiring title thereto; and, if he fails to secure the full amount of said property, that it will endanger the rights of said Collier, who is a surety on said notes, by requiring him to pay a larger sum than he agreed or is legally bound to pay.

Others owning shares were made parties, but their rights are not involved here. The court overruled the motion of appellant (defendant) to make the Post-Dispatch Publishing Company, H. M. Jacoway and J. H. Page parties. Then the court made the following findings and decree:

"That defendant Thompson is the owner of 104 shares of stock of said Post-Dispatch Publishing Company of the nominal value of $25 per share; that said Thompson transferred his said shares for value to plaintiff John Grace, and undertook to incumber same with a mortgage lien by executing a mortgage on the physical property of the Post-Dispatch Publishing Company, which the court finds, and so finding decrees, constitutes an equitable mortgage on the shares of said J. S. Thompson in favor of the plaintiff as security for said debt; that the shares so designed and intended to be incumbered for the debt due Grace had in fact never been issued to Thompson, but that he is entitled to have said shares issued to him upon his demand and by otherwise complying with the law; that said mortgage operated as an equitable transfer by said Thompson to Grace of $2,600 of the capital stock of the said Post-Dispatch Publishing Company, and that there is still due on said debt the sum of $2,434 as principal and interest. The court rendered judgment against appellant for that amount, and decreed that the shares of stock held by appellant in the Post-Dispatch Publishing Company be sold, and appointed a commissioner to make the sale with proper orders to give title thereto to the purchaser at said sale. To reverse that decree this appeal was prosecuted by appellant.

*Bullock & Davis* and *John M. Parker,* for appellant.

1.  The original and amended complaints are at variance, and the only evidence admissible as to the property or interest bought by Thompson is the mortgage, which shows clearly that he bought the entire property, and not a part only, or interest therein. The court's finding, therefore, that he bought 104 shares of the capital stock, or an interest in the property proportional thereto, is not supported by the evidence.

2.  Jacoway, Page and the Post-Dispatch Publishing Company were indispensable parties, because the legal title was in Jacoway and Page, or one of them, and because, as to the Publishing Company, unless it was before the court, no order made in reference to the stock would be binding upon it. 84 Ark. 444; 39 Ark. 308; 17 Am. & Eng. Enc. of L., 1st Ed., 650, note; 23 Ark. 477; 28 Ark. 171; 37 Ark. 517; 74 Ark. 138. Every person secured by the mortgage should be made a party to the bill to foreclose it. Jones on Chat. Mortg. 4th Ed., § 783 and note; Kirby's Dig. § 6011; 49 Ark. 102.

*Priddy & Chambers,* for appellee.

None of the persons asked by appellant to be made parties defendant is a necessary party; neither has or claims any interest in the foreclosure suit adverse to appellee. No formal issuance of stock certificates of stock was necessary in order for Thompson, Jacoway's assignee, to become a stockholder. 17 S. W. 1043; 26 Am. & Eng. Enc. of L. 876.

WOOD, J., (after stating the facts.) First. The proof showed that the Post-Dispatch Publishing Company was a corporation having a capital stock of $3,000 issued in shares of $25 each. John H. Page finally became the owner of all except sixteen shares, and he transferred all of his shares except one to H. M. Jacoway. Jacoway became the owner of 104 shares of the stock of the nominal value of $2,600. Jacoway sold all of his stock to appellant for $2,750. Two thousand of this was furnished by appellee. Jacoway had a mortgage to secure him for the balance of the purchase money, but there is an agreement in the record between him and appellee to the effect that appellee's mortgage should have precedence over his. Appellant testified "that it was his understanding that Jacoway owned the Post-Dispatch, and that Jacoway sold it to him; that the only evidence of the

transaction was the note and mortgage; that there was no written transfer of the stock; that he had several times demanded the stock of Jacoway, and he stated that he did not have it; that the stock certificates and books were lost; that Jacoway may have stated that he owned $2,600 in it, would not say that he did not; that at the time Jacoway sold him the Post-Dispatch he did not tell him anything about there being other stock; that he (appellant) may have had knowledge of that before, may have known that there was $3,000 of stock, and, of course, that there was $400 more of stock outstanding." The finding of the court that appellant was the owner of 104 shares of stock in the Post-Dispatch Publishing Company was amply sustained by this evidence. Appellant was put in possession of the plant, and, whether he supposed that he owned the whole plant or the entire capital stock (which carried the right to the *corpus*) or not, it is evident that he intended by the note and mortgage to transfer to appellee the entire interest he had purchased from Jacoway, to secure appellee for the money he had advanced to appellant to enable the latter to make the purchase. It is also true that the only interest he acquired from Jacoway was the 104 shares of stock, for that was all the interest Jacoway had. This evidence, we think, is ample to support the finding of fact by the court that appellant "transferred his shares of stock for value to appellee, and undertook to incumber same with a mortgage on the physical property of the Post-Dispatch Publishing Company."

The court was also correct in holding upon these findings of fact that the transaction constituted an equitable mortgage in favor of appellee on the shares of stock or interest that appellant owned. It is clear that both parties intended that the mortgage should cover appellant's interest, and the court properly construed and enforced the mortgage accordingly.

Second. Section 6011 of Kirby's Digest provides that the court may determine any controversy between parties before it when it can be done without prejudice to the rights of others, or by saving their rights. It also provides that when a determination of the controversy between the parties before the court can not be made without the presence of other parties the court must order them to be brought in. "The obvious intention of the statute," says the court in *Smith* v. *Moore,* 49 Ark. 102, "is to

require all persons to be made parties to an action who will be necessarily and materially affected by its result, and to forbid the court from determining any controversy between the parties before it where it cannot be done without prejudice to the rights of others or by saving their rights."

There were no other mortgagees of this stock except Jacoway, and he acknowledged appellee's superior rights. His agreement in the record shows that he did not question the transfer to appellee.

Page was a witness, and his evidence was such as to warrant the chancellor in finding that he had no interest. The interest of the few outstanding small stockholders could not possibly have been affected by the transfer of appellant's shares of stock, and the corporate entity could not have been in any manner affected by the transfer and by the sale of the stock under the mortgage. Appellee was in no wise concerned with any grievance that appellant claimed to have against Jacoway. No one who was in any wise connected with the corporation was affected by the controversy except appellant and appellee, and appellant was in no position to ask for a postponement of the proceedings. The court of chancery had plenary power to protect the purchaser of the stock at the sale ordered and to see that he secured a correct transfer on the books of the corporation and a perfect legal title. No mere irregularities in the transfer of stock can defeat the rights of the purchaser thereof. Helliwell on Stock and Stockholders, § 159. See *Home Stock Ins. Co.* v. *Sherwood,* 72 Mo. 461; *Rio Grande Cattle Co.* v. *Burns,* 17 S. W. 1043; 26 Am. & Eng. Ency. Law (2d Ed.) 876.

There is therefore no merit in appellant's contention that bidders would be deterred and the stock sacrificed unless the parties named were brought in. The court did not err in overruling the motion to have others made parties. The decree is in all things correct, and is affirmed.

HART, J., not participating.