Robert E. WATTS, Jr., Appellant,

v.

Charles E. MILES et al., Appellees.

No. 16129.

Court of Civil Appeals of Texas,
San Antonio.

Jan. 9, 1980.

Rehearing Denied April 9, 1980.

Judson H. Phelps, Jr., Brenan & Phelps, San Antonio, for appellant.

Frank Y. Hill, Jr., Boerne, for appellees.

## OPINION

CADENA, Chief Justice.

Plaintiff, Robert E. Watts, Jr., complains of an order granting the motion for in-

structed verdict filed by defendants, Charles E. Miles and Frank Campbell.

Plaintiff sought recovery from Miles for conversion of shares of stock in a corporation, Cay Development Corp., and also alleged a cause of action against Miles and Campbell based on a conspiracy to deprive plaintiff of such stock. Plaintiff was the only person who testified in the trial court.

In July, 1974, Miles owned a 93-acre tract of land which he wished to develop. Plaintiff and Miles entered into an agreement under which plaintiff was to assist in securing the necessary financing in return for which plaintiff was to receive, in increments, interests in the land until he would own a 25% interest in the property. The initial efforts to secure financing were not successful, and in October, 1974, Miles and plaintiff entered into a new agreement. Under the new agreement, plaintiff and Miles were to "dilute" their interests in the land and convey part ownership of the land to such investors as would provide the working capital needed for the proposed development. The new arrangement called for Miles to "reactivate" Cay Development Corp., a "dormant" corporation which had been formed earlier by Miles, and to convey to such corporation the land in question in return for 50% of the capital stock of such corporation. Miles was to transfer shares from his 50% interest in the corporation to plaintiff, so that plaintiff would own 16% of the capital stock of such corporation.

Plaintiff and Miles then entered into negotiations with a group of potential investors headed by Campbell. Agreement was reached that Campbell and his group would receive 50% of the capital stock of the corporation, with the other 50% being issued to Miles, and proper resolutions carrying this agreement into effect were adopted. Plaintiff was to act as president of the corporation at a salary of $2,000.00 per month, and was to be paid $6,000.00 for "preincorporation" services which he had rendered. In addition, plaintiff was to be reimbursed for preincorporation expenses incurred by him.

No certificates evidencing ownership of stock in the corporation were ever issued.

With the assistance of Campbell, a loan was secured from a Dallas bank to pay off the existing indebtedness on the land. Although the loan was to the corporation, each officer and director, including plaintiff, individually guaranteed repayment of the loan. This loan was never repaid.

In January, 1975, Miles, who had been elected chairman of the board of directors of the corporation, told plaintiff that "a quorum" of the board of directors had met and had "fired" plaintiff from his position as president. This was confirmed by Campbell in a subsequent conversation with plaintiff, at which time Campbell added that plaintiff was no longer connected with the corporation as officer, shareholder or director, and that no shares of the capital stock would be issued to plaintiff.

The Dallas bank, on default of the note evidencing the loan to the corporation, foreclosed on the land in question and notified plaintiff that he would be expected to pay the deficiency. The plaintiff, at the time of trial, had paid nothing to the Dallas bank, and there is no evidence that the bank attempted to collect from plaintiff. The corporation is insolvent.

Plaintiff testified that at the time he was removed as president the project was in the process of being funded. He was never paid any portion of his salary, nor was he paid for his preincorporation services or expenses.

■ The evidence, at least, raises a question of fact concerning the question of conversion. Under the July, 1974, written agreement between plaintiff and Miles, plaintiff had a claim to an interest in the land. Under the October agreement, plaintiff relinquished this claim in return for the promise of Miles to transfer to plaintiff ownership of shares of stock in the corporation. The evidence reflects a demand by plaintiff that Miles carry out this promise and a refusal by Miles to do so. *See Beam v. Voss,* 568 S.W.2d 413, 420 (Tex.Civ.App. —San Antonio 1978, writ ref'd n. r. e.); *Loomis v. Sharp,* 519 S.W.2d 955, 958 (Tex. Civ.App.—Texarkana 1975, writ dism'd).

■ The fact that certificates evidencing ownership of shares of stock were never issued is irrelevant. In *Rio Grande Cattle Co. v. Burns*, 82 Tex. 50, 57, 17 S.W. 1043, 1046 (1891), our Supreme Court said that unissued stock certificates can be the subject of conversion, and this was followed in *Bower v. Yellow Cab Co.*, 13 S.W.2d 708 (Tex.Civ.App.—El Paso 1929, writ ref'd). In *Bower*, where plaintiff had unsuccessfully demanded that her shares be issued and delivered, the court held that, in addition to the corporation, the officers and directors who participated in the refusal to issue the stock were also liable. 13 S.W.2d at 710.

■ Defendants assert that plaintiff's petition did not allege a cause of action for conversion. Although the word "conversion" does not appear in plaintiff's pleading, there are allegations of the agreements between plaintiff and Miles, allegations that plaintiff had performed his obligation but that despite demands by plaintiff, Miles had refused to transfer the stock to plaintiff. This is sufficient to give fair notice of plaintiff's claim under Rule 47, Tex.R.Civ.P. *See Rodriguez v. Yenawine*, 556 S.W.2d 410, 414 (Tex.Civ.App.—Austin 1977, no writ); *Christy v. Hamilton*, 384 S.W.2d 795, 796 (Tex.Civ.App.—Amarillo 1964, no writ).

■ We also conclude that the evidence raised a question of fact in connection with plaintiff's cause of action for conspiracy. A civil conspiracy is a "combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *State v. Standard Oil Co.*, 130 Tex. 313, 329, 107 S.W.2d 550, 559 (1937). There is clearly sufficient evidence to show that plaintiff was deprived of his stock as the result of an agreement between Miles and Campbell that plaintiff would no longer be involved in the project, and that he would receive no shares of stock.

The court erroneously directed a verdict in favor of defendants Miles and Campbell. The judgment of the trial court is reversed and the cause is remanded for further proceedings.