# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00454-CV

**Appellant, Michael P. Krainz, Individually and Derivatively on behalf of
Kodiak Resources, Inc.// Cross-Appellants, Kodiak Resources, Inc. and Matthew J. Telfer**

**v.**

**Appellees, Kodiak Resources, Inc. and Matthew J. Telfer// Cross-Appellee, Michael P.
Krainz, Individually and Derivatively on behalf of Kodiak Resources, Inc.**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-07-002701, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

Michael P. Krainz filed this suit complaining of the failure of Kodiak Resources, Inc. to issue certificates memorializing the transfer of shares of Kodiak stock to Krainz. Matthew J. Telfer is Kodiak's founder and, he contends, its sole owner. The trial court[1] granted summary judgment based on limitations against Krainz's claim for breach of contract, granted Kodiak's special exceptions based upon the summary judgment, denied Kodiak's motion to enforce the special exceptions, and granted Kodiak's plea to the jurisdiction dismissing for want of jurisdiction Krainz's tort claims. The trial court also denied Kodiak's claim for attorney's fees. On appeal, Krainz contends that the trial court erred by granting the summary judgment, the plea to the jurisdiction, and special exceptions against his pleadings. Kodiak[2] contends that the trial court erred

---

[1] Due to the workings of Travis County's central docket system, the orders by "the trial court" herein were actually signed by an amalgam of at least five Travis County District Judges.

[2] We will refer to appellees/cross-appellants collectively as Kodiak unless otherwise specified.

by not enforcing the special exceptions, by denying Kodiak's motion for summary judgment for attorney's fees, and by denying its claims for attorney's fees. We will reverse the judgment and remand the cause for further proceedings.

**BACKGROUND**

Telfer founded and solely owned Kodiak. He hired Krainz as Kodiak's controller in 1999 to maintain the company's records and to work with outside accountants to prepare tax returns. Krainz did not have a written employment contract. Krainz contends that Telfer induced him to work for a lower salary by promising to convey ten percent of Kodiak's stock to him at some unspecified time.[3] Kodiak denies there was any agreement to transfer stock.

Telfer formed another company named Border to Border Exploration (hereafter, BBX) and in 2001 assigned all Kodiak employees to BBX. As a BBX employee, Krainz continued his duties for Kodiak through mid-2007. During that time, Kodiak filed tax returns that listed Telfer as Kodiak's sole shareholder.

Krainz contends that Kodiak acted in ways consistent with Krainz's part-ownership of Kodiak. A limited partnership that Kodiak invested in, Border to Border #1 LP, paid overriding royalty interest payments to Krainz in an amount consistent with his ownership of 10% of Kodiak. In March 2005, Krainz began receiving directly from Kodiak a payment equal to ten percent of the overriding royalty interest payment Kodiak received based on its ownership interest in Neches Development, LLP. In November 2005, Telfer declined to increase Krainz's cash compensation in part because, as he explained in a letter to Krainz, "your 10% ownership of Kodiak Resources, Inc. has become more valuable."

---

[3] Krainz initially alleged that Kodiak promised to transfer the stock upon his employment, but Krainz amended his petition to allege that the agreement did not specify the time for transfer.

2

Krainz never received any Kodiak stock certificates. In January 2004, Krainz asked Telfer to "formalize" the transfer of 10% of Kodiak's stock, but Telfer requested that he sign a "buy-sell agreement," which Krainz declined to do. In late 2006, Krainz asked that Kodiak issue him stock certificates. In April 2007, Kodiak's attorney wrote a letter that acknowledged Krainz's part ownership of Kodiak as well as his ownership interest in other companies owned by Kodiak "through his ownership in Kodiak." The attorney distinguished between ownership of part of the company and stock ownership and also offered a "retroactive gift of non-voting stock." In June 2007, Telfer offered on behalf of Kodiak to "retroactively gift" Krainz with shares as "consideration of friendship and not as compensation."

Krainz sued in August 2007, alleging breach of an agreement to convey the stock. He later amended his petition to request a declaration of his rights as a minority shareholder and sought recovery for minority shareholder oppression, breach of fiduciary duty, malicious suppression of dividends, and related torts.

Kodiak moved for summary judgment against the breach-of-contract claim, urging that the claim accrued in 1999 when Krainz began work for Kodiak and was time-barred in 2007. Despite Krainz's amendment of his petition to eliminate the allegation that the stock transfer was due upon his employment, the trial court granted the motion. Kodiak then specially excepted to any references to the breach-of-contract claim remaining in Krainz's petition. Kodiak also filed a plea to the jurisdiction, claiming that Krainz lacked the shareholder status requisite to raising derivative shareholder suits. Finally, Kodiak sought summary judgment on its claim for attorney's fees.

In addition to the partial summary judgment against Krainz's breach-of-contract claims based on limitations, the trial court also granted special exceptions requiring deletion from Krainz's petition of all assertions that he should have been a Kodiak shareholder by virtue of an

3

oral agreement or that he is a shareholder through "equitable ownership." Kodiak contends that the special exceptions also served to reject Krainz's theories based on being an equitable shareholder. Kodiak also filed a motion to enforce the special-exceptions ruling by dismissing Krainz's remaining claims. The trial court denied that motion, but later granted Kodiak's plea to the jurisdiction, holding that Krainz lacked standing to assert shareholder claims. The trial court denied both parties' motions for partial summary judgment on the issue of Kodiak's request for costs and attorney's fees, but then signed a judgment that denied the claim for attorney's fees entirely and declared the judgment final.

## DISCUSSION

Both parties appealed the judgment and particular underlying interlocutory orders. Krainz challenges the rulings that rejected the merits of his contract claim and jurisdiction over his derivative tort claims. Krainz contends that the trial court should not have granted special exceptions to his pleadings, and Kodiak contends that the court should have enforced those exceptions. Kodiak also contends that the trial court should have awarded it attorney's fees.

**Breach-of-contract claim**

Krainz contends that the trial court erred by granting Kodiak's motion for a take-nothing summary judgment on his breach-of-contract claim. Krainz pleaded that Kodiak, through Telfer, promised to convey ten percent of its stock as part of his compensation as controller but refused to sign over the stock certificates memorializing the transfer. Krainz also alleged that Kodiak had acknowledged Krainz's ten-percent ownership despite not transferring the certificates.

Kodiak moved for summary judgment expressly on one ground: that Krainz's suit for breach of contract was barred because Kodiak's statute of limitations defense is established as a

4

matter of law. While denying that any stock-transfer agreement existed, Kodiak argued that Krainz's petition was time-barred on its own terms. Krainz initially pleaded that Kodiak promised and failed to convey the stock upon his employment on April 22, 1999, but he did not file suit to enforce that promise until August 27, 2007—well more than four years later. Although Krainz filed amended petitions that deleted the "upon employment" date for transfer, the trial court granted the motion.

Summary judgment is proper if the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). In our de novo review of a summary judgment, we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *SWEPCO*, 73 S.W.3d at 215. When amended petitions are filed timely, trial courts must base their decision on the amended pleading, not any superseded petition. *Sosa v. Central Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995).

Krainz contends that Kodiak did not show that the limitations period lapsed because Telfer did not specify when he would transfer a 10% equity ownership in Kodiak to Krainz.[4] While that was not how Krainz initially pleaded his case, it is consistent with the allegation in his Second Amended Original Petition and his argument in Plaintiff's Response to Defendant Kodiak Resources, Inc.'s Motion for Final Summary Judgment, both filed before the hearing on Kodiak's

---

[4] Krainz also argues on appeal that Kodiak had already transferred ownership, just not the stock certificates, bringing it in line with the facts of *Greenspun v. Greenspun*, 194 S.W.2d 134 (Tex. Civ. App.—Fort Worth 1946), *aff'd*, 198 S.W.2d 82 (Tex. 1946). Krainz does not allege a date certain on which the transfer of ownership occurred. Kodiak contends that Krainz's pleadings on file at the time of the summary judgment did not support that theory. We need not decide whether Krainz's petition supports the incomplete transfer theory because the summary-judgment motion was premised solely on the abandoned allegation that the stock transfer was to occur on the first day of employment in April 1999 but did not. Whether Krainz's live petition supports another theory of transfer, incomplete transfer, or breach is irrelevant to this appeal because Kodiak's motion fails on its own terms using the more restrictive view of Krainz's pleadings.

summary-judgment motion. He contends that Kodiak first refused to issue a stock certificate representing his ownership share in late 2006. He filed suit less than a year later.

On appeal, Kodiak reiterates its reliance on Krainz's Original Petition and First Amended Original Petition that were the basis for its summary-judgment motions, and also cites discovery responses as support. Kodiak's motion was based on allegations in Krainz's initial petitions that the shares were to be transferred "upon employment" or "at the time of his employment." In an interrogatory response, Krainz stated that he "agreed to accept a reduced salary with a new company in exchange for . . . a compensation package that included a starting annual salary of $45,000, . . . a 10% ownership in [Kodiak], and company-provided health insurance." In response to an interrogatory about the terms that Krainz alleged existed on the date he began his employment, Krainz reiterated that his compensation was to include the salary, the stock, and the health insurance. Replying to a request for disclosure, Krainz stated that he sued for Kodiak's "breach of an oral contract in failing to transfer 10% of the common stock as part of his employment compensation. The factual bases of [Krainz's] claims are outlined in [his] Original Petition." This response was not amended or supplemented prior to the grant of summary judgment. Kodiak contends that these responses demonstrate conclusively that Krainz expected the stock to be provided immediately upon employment in 1999, just like the salary and insurance.

The pleadings on file at the time the motion was filed do not support the summary judgment because they were superseded by later-filed pleadings. We must base our decision on the live pleadings on file at the time the motion was considered. *Sosa*, 909 S.W.2d at 895. The Second Amended Original Petition was file-stamped July 6, 2009—exactly a week before the summary-judgment hearing on July 13, 2009 and timely for consideration. *See id.* In filing his Second Amended Original Petition, Krainz abandoned and superseded his earlier assertions

6

regarding the timing of the transfer of shares and stated expressly that the agreement to transfer the shares "did not specify the time that such stock would be transferred to Plaintiff." Krainz's live pleading does not admit that his cause of action accrued in 1999 or at any particular time. This case is thus distinct from cases in which the live pleading alleged a date the transfer was due, and thus a date of the breach of the promise to transfer. *See Irwin v. Prestressed Structures, Inc.*, 471 S.W.2d 865, 866 (Tex. Civ. App.—Eastland 1971, writ ref'd n.r.e.) (stock to be transferred within the first year of employment); *cf. Davis Apparel v. Gale-Sobel*, 117 S.W.3d 15, 18 (Tex. App.—Eastland 2003, no pet.) (breach of commission promise occurred with first allegedly deficient commission payment). The trial court erred if it granted the motion for summary judgment based on the superseded pleadings that contained the later-abandoned allegation that Kodiak promised to convey the stock upon Krainz's employment.

The live pleadings, including the Second Amended Original Petition, and the evidence presented do not establish as a matter of law that the cause of action accrued four years or more before Krainz filed suit—sometime before August 27, 2003—as required for Kodiak's motion to have merit. The petition does not establish a date by which the transfer was to occur. The discovery responses stating that the stock transfers were part of Krainz's compensation do not support a finding as a matter of law that Kodiak agreed to transfer 10% of its stock to Krainz on his first day of work or, for that matter, on any particular date. Krainz's discovery response that adopted allegations in the Original Petition is not an irrebuttable judicial admission because of the superseding petition. *See Sosa*, 909 S.W.2d at 895. To the extent that the Original Petition's allegations survive as part of the unamended discovery response, they are contradicted by other evidence on file when the trial court considered the summary-judgment motion, including Krainz's statement in his affidavit that "[t]he oral agreement between Telfer, acting on behalf of Kodiak,

7

and myself did not specify the time that such stock would be transferred to me." The record contains a genuine issue of material fact regarding the date Kodiak allegedly promised to transfer the stock. The trial court, therefore, erred by granting the motion for summary judgment against Krainz on statute-of-limitations grounds.

**Special exceptions**

Krainz also contends that the trial court erred by granting Kodiak's special exceptions and ordering Krainz "to delete all allegations pertaining to his claim of breach of contract against Kodiak which was dismissed with prejudice by the court on July 29, 2009." Because the grant of special exceptions was explicitly based on the trial court's summary judgment concerning Krainz's contract claims, it was subject to the same error that undermined that summary judgment. We reverse the order granting the special exceptions concerning the breach-of-contract allegations.

**Shareholder claims**

Krainz contends that the trial court erred by granting Kodiak's plea to the jurisdiction and dismissing the claims in his Fifth Amended Original Petition on the ground that he lacked standing to pursue those claims. The issue of standing is a legal question that we review de novo. *Texas Lottery Comm'n v. Scientific Games Int'l, Inc.*, 99 S.W.3d 376, 380 (Tex. App.—Austin 2003, pet. denied). Standing is a component of subject-matter jurisdiction and is therefore essential to a court's power to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443, 445-46 (Tex. 1993). To establish standing, one must show a justiciable interest by alleging an actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally. *Benker v. Texas Dep't of Ins.*, 996 S.W.2d 328, 330 (Tex. App.—Austin 1999, no pet.); *see also Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). If the evidence raises a fact question

8

on jurisdiction, the trial court cannot grant the plea. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004). In reviewing standing on appeal, we construe the petition in favor of the plaintiff, and if necessary, review the entire record to determine if any evidence supports standing. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446.

In his Fifth Amended Original Petition—filed after the motion for summary judgment was granted—Krainz alleged that Telfer, as majority shareholder of Kodiak, had oppressed Krainz, a minority shareholder. Krainz also alleged that Telfer breached his fiduciary duty owed to Krainz as a minority shareholder because of Telfer's domination of the business and role as officer of Kodiak. Krainz also complained that Telfer maliciously suppressed dividends that should have been paid to Krainz as a shareholder. Krainz also requested a declaration of his rights and status as a minority shareholder of Kodiak.

Kodiak made several arguments that Krainz lacked standing as a shareholder to pursue these causes of action. Kodiak relied on Krainz's admission that he never received Kodiak stock certificates, along with the lack of an enforceable contract to receive them, to show that he lacked standing as a shareholder. Kodiak also pointed to its own tax returns (prepared with Krainz's knowledge or assistance) that list Telfer as Kodiak's sole owner and to Krainz's tax returns, which did not mention ownership in or dividends from Kodiak. Finally, Kodiak argued that Krainz's claim for reimbursement for the tax consequences of recovering damages through other causes of action serves to prove that Krainz is not a shareholder. The trial court concluded that Krainz lacked standing to assert the claims in his Fifth Amended Original Petition, granted Kodiak's plea to the jurisdiction regarding these claims without stating a specific basis, and dismissed the claims.

On appeal, Krainz contends that a fact issue exists regarding whether he is a shareholder. He concedes that he has not been issued share certificates, but argues that Kodiak

9

had an oral agreement to convey them. He also contends that Kodiak's distribution of a share of overriding royalty payments from Kodiak and a Kodiak-owned subsidiary consistent with a 10% ownership stake in Kodiak created at least a fact question regarding his status. Kodiak responds (1) that Krainz cannot obtain "legal" shareholder status without a contract that was actually performed or an ability to enforce a contract to be made a shareholder, and that (2) Krainz's "equitable shareholder" theory is legally untenable because: (a) Texas law does not allow a trial court to use equity to turn a non-shareholder into a shareholder, and (b) Krainz was not a "beneficial holder of shares" as that term is statutorily defined, nor was he an "un-certificated" owner or an "owner of equitable title" as the law has defined those terms.

The law does not require possession of a stock certificate to substantiate a claim of ownership of stock. For instance, in the statutory scheme describing derivative proceedings brought by shareholders on behalf of corporations, the term "shareholder" includes "a beneficial owner whose shares are held in a voting trust or by a nominee on the beneficial owner's behalf." Tex. Bus. Orgs. Code § 21.552(2). The Dallas Court of Appeals recently acknowledged a case holding that delivery of a stock certificate or endorsement of said certificate is not necessarily required to show a transfer of stock. *Hydroscience Tech., Inc. v. Hydroscience, Inc.*, No. 05-11-01536-CV, 2013 WL 1897149, at *6 (Tex. App.—Dallas May 7, 2013, pet. filed) (citing *Greenspun v. Greenspun*, 194 S.W.2d 134 (Tex. Civ. App.—Fort Worth), *aff'd*, 198 S.W.2d 82 (Tex. 1946)). In *Greenspun*, Max Greenspun sued to recover a share of the value of the assets of a company mostly owned and wholly dissolved by his brother, Morris Greenspun. *Id.* at 140. In 1918, Morris owned all of the stock in his company and hired his brother, Max Greenspun, as a temporary general manager. *Id.* at 135. Morris agreed to compensate Max with a salary and shares of stock, though they did not specify how much or when stock would be transferred. Although no shares of stock were ever issued

10

documenting this conveyance, the minutes of a corporate meeting in 1920 stated that Morris owned 6100 shares and that Max owned 500 shares of stock. *Id.* at 136-37. After Morris dissolved the corporation in 1941, Max sued—not for the transfer of ownership or the issuance of stock certificates, but for a share of its assets proportionate to the number of shares he allegedly owned. The court of appeals held that, although limitations would have prevented Max from suing for breach of the agreement to transfer shares of stock, he sued for compensation for his ownership share. *Id.* at 137. The Fort Worth court noted that "[s]tudy of the decisions of the courts is rendered difficult by reason of the differences in the various situations in which the question of sufficiency of a transfer may arise." *Id.* at 137. The court wrote that, "[a]s between transferor and transferee, it seems to be the rule that transfer of title may take place though there is no delivery of the certificates themselves, nor endorsement of them, nor transfer of them on the books of the corporation, and even though the sale be by parol." *Id.* The court held that the party claiming the transfer must show "whether the minds of transferor and transferee met, whether there was an intention that the stock should then and there be vested in the transferee, and whether there were acts in the nature of a symbolical delivery of the property." *Id.* (cited by *Hydroscience*, 2013 WL 1897149, at *6). The court concluded that sufficient evidence supported the jury's findings that Max owned 500 shares of stock even though no certificates were ever issued to him. *Id.* at 137-38.[5]

The Texas Supreme Court recognized ownership of stock without possession of certificates, as well as "equitable" ownership of stock, long before the *Greenspun* opinions. In 1891, the Texas Supreme Court held that a person can acquire shareholder status without possession of

---

[5] We note that the court of appeals remanded the issue of ownership, however, as part of a general remand required by its reversal of the damage award on other grounds. *Greenspun*, 194 S.W.2d at 142. The court held that to affirm the judgment awarding the shares "would be to sanction a trial by piecemeal of an indivisible cause of action," which it declined to do. *Id.* (op. on reh'g).

stock certificates if the person is entitled to receive stock and has paid for it, but the company refuses to issue the stock certificates despite demand that it do so. *Rio Grande Cattle Co. v. Burns*, 17 S.W. 1043, 1044 (Tex. 1891). The court held that this was true even though the Texas statute "provide[d] that the stock 'shall be transferable only on the books of the corporation.'" *Id.* (citing former Tex. Rev. St. art. 590). The supreme court further held that the shareholder-without-certificate in that case had validly assigned his interest in the company to a third party, which action "vested at least the equitable title to the stock or interest of Glasscock in the appellee, and entitled it to demand recognition at the hands of the corporation." *Id.*

*Greenspun* and *Rio Grande Cattle* contrast with the Texas Supreme Court's refusal to recognize shareholder status in an experienced businessman working under both a written agreement to transfer stock and an oral agreement to postpone the delivery of that stock. *Willis v. Donnelly*, 199 S.W.3d 262, 277-78 (Tex. 2006). That case, however, had a factual record fully developed at a jury trial that demonstrated the lack of merit in the claim of shareholder status. *Id.* To defeat the plea to the jurisdiction, Krainz need only raise at least a fact question about jurisdiction. From these cases, we gather that establishing ownership without stock certificates depends on the evidence presented, including the nature of the parties, the nature of their relationship, and their representations to each other. *See generally id.*; *Greenspun*, 194 S.W.2d at 137; *Rio Grande Cattle*, 17 S.W. at 1044-45.

We conclude that Krainz's pleadings and the evidence in the record raise at least a fact issue regarding whether he has shareholder status in Kodiak that creates standing to bring his claims. He alleges that there was an oral agreement to grant him shares in exchange for the work that he provided—a claim revived by our reversal of the summary judgment on his breach-of-

12

contract claim.[6]  We emphasize that we have not concluded that Krainz must prevail on the merits, but have determined only that the state of the record does not conclusively demonstrate the absence of a valid contract claim.  Krainz has raised his potential right to be a shareholder under the contract claim sufficiently to render erroneous the grant of the plea to the jurisdiction on his shareholder derivative claims.

**Cross issues**

Kodiak's issues on cross-appeal rely significantly on the summary judgment on Krainz's breach-of-contract claim.  Because we have reversed that judgment, we will overrule all of Kodiak's cross issues.

Kodiak complains that the trial court should have enforced the special exceptions requiring Krainz to replead as a result of the summary judgment.  As discussed above, our reversal of the summary judgment renders those special exceptions moot and, likewise, any controversy over the denial of the motion to enforce those special exceptions.

Kodiak complains about the denial of its request for attorney's fees as a prevailing party.  Because we have reversed the judgment on which it prevailed, we cannot conclude that the trial court erred by denying attorney's fees.  Further, attorney's fees and the justness of an award of them will be subject to change during the proceedings on remand.

Kodiak complains that the trial court erred by entering a final judgment upon its interlocutory denial of two motions for partial summary judgment concerning attorney's fees.  Our

---

[6] Kodiak asserts that Krainz acknowledged that he had an "unenforceable oral agreement." In paragraph 22 of Plaintiff's Response to Defendants Kodiak Resources, Inc. and Matthew J. Telfer's Amended Special Exceptions, Krainz wrote, "Defendants' allegation that Plaintiff has no status as a shareholder other than based on an unenforceable oral agreement is false."  Krainz's response seems a characterization of Kodiak's argument rather than a concession that his agreement is unenforceable.

reversal of the final judgment renders that assertion moot because the attorney's fees issue will be remanded along with the remainder of the cause.

## Conclusion

Having sustained appellant's issues as set forth herein, and found other issues raised by the parties to be rendered moot by those decisions, we reverse the judgment of the trial court and remand the cause for further proceedings.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Remanded

Filed:   August 30, 2013